## INTERNATIONAL FREIGHTING CORPORATION, INC., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5.

Circuit Court of Appeals, Second Circuit.

March 6, 1943.

---

[4] Benner v. Atlantic Dredging Co., 134 N.Y. 156, 31 N.E. 328, 17 L.R.A. 220, 30 Am.St.Rep. 649; Booth v. Rome, W. & O. T. R. Co., 140 N.Y. 267, 35 N.E. 592, 596, 24 L.R.A. 105, 37 Am.St.Rep. 552; New York Steam Co. v. Foundation Company, 123 App.Div. 254, 108 N.Y.S. 84, 90, reversed on other grounds New York Steam Co. v. Foundation Company, 195 N.Y. 43, 87 N.E. 765, 767, 21 L.R.A.,N.S., 470, where the Court of Appeals said: "The defendant cannot be held liable on the theory that it was an ordinary trespasser, for it did not touch the structure of the plaintiff."

Before L. HAND, CHASE and FRANK, Circuit Judges.

Paul E. Shorb, and Marion P. Wormhoudt, both of Washington, D. C., and David C. Moore, of Wilmington, Del. (Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to the Atty. Gen., for respondent.

FRANK, Circuit Judge.

■ 1. Up to the time in 1936 when the shares were delivered to the employees, the taxpayer retained such control of the shares that title had not passed to the employees.[1] We think the Tax Court correctly held that the market value at the time of delivery was properly deducted by the taxpayer as an ordinary expense of the business under Revenue Act 1936, § 23(a), 26 U.S.C.A. Int.Rev.Code § 23(a), because that delivery was an additional reasonable compensation for past services actually rendered. Cf. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733.[2] The payment depleted the taxpayer's assets in an amount equal to that market value fully as much as if taxpayer had, at the time of delivery, first purchased those shares.

■ 2. We turn to the question whether the transaction resulted in taxable gain to taxpayer. We think that the Tax Court correctly held that it did. The delivery of those shares was not a gift, else (1) it would have been wrongful as against taxpayer's stockholders, (2) the value of the shares could not have been deducted as an expense under § 23(a), and (3) the employees as donees would not be obliged to pay, as they must,[3] an income tax on what they received. It was not a gift precisely because it was "compensation for services actually rendered," i. e., because the taxpayer received a full quid pro quo. Accordingly, cases holding that one is not liable for an income tax when he makes a gift of shares are not in point. Nor is General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, pertinent. For there the distribution was by way of a dividend to the taxpayer's own shareholders; in effect they received in altered form what they had theretofore owned collectively; as no quid pro quo passed to the taxpayer from those distributees, there was no closed taxable transaction; by the same token, that taxpayer could not have deducted anything from its income on account of that distribution.

■ But, as the delivery of the shares here constituted a disposition for a valid consideration, it resulted in a closed transaction with a consequent realized gain. It is of no relevance that here the taxpayer had not been legally obligated to award any shares or pay any additional compensation to the employees; bonus payments by corporations are recognized as proper even if there was no previous obligation to make them; although then not obligatory, they are regarded as made for a sufficient consideration.[4] Since the bonuses would be invalid to the extent that what was delivered to the employees exceeded what the services of the employees were worth, it follows that the consideration received by the taxpayer from the employees must be deemed to be equal at least to the value of the shares in 1936. Here then, as there was no gift but a disposition of shares for a valid consideration equal at least to the market value of the shares when delivered, there was a taxable gain equal to the difference between the cost of the shares and that market value.

For § 111(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 111(a) provides that the gain from "the sale or other disposition of property" shall be the excess of "the amount realized therefrom" over "the adjusted basis" provided in § 113(b), and § 113(b)—in the light of § 113(a), 26 U.S.C.A.Int.Rev.Code § 113(a)—makes the "basis" the cost of such property. True, § 111(b) provides that "the amount realized" is the sum of "any money received plus the fair market value of the property (other than money) received." Literally, where there is a disposition of stock for services, no "property" or "money" is received by the person who thus disposes of the stock. But, in similar circumstances, it has been held that "money's worth" is received and that such a receipt comes within § 111(b). See Commissioner v. Mesta, 3 Cir., 123 F.2d 986, 988; cf. Commissioner v. Halliwell, 2

---

[1] Cf. Olson v. Commissioner, 7 Cir., 67 F.2d 726, 729.

[2] § 23(a) permits deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered."

[3] Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Fisher v. Commissioner, 2 Cir., 59 F.2d 192; Olson v. Commissioner, supra.

[4] Cf. the cases cited in the preceding footnote.

Cir., December 1, 1942, 131 F.2d 642; Kenan v. Commissioner, 2 Cir., 114 F.2d 217.[5]

The taxpayer properly asks us to treat this case "as if there had been no formal bonus plan" and as if taxpayer "had simply paid outright 150 shares of duPont stock to selected employees as additional compensation." On that basis, surely there was a taxable gain. For to shift the equation once more, the case supposed is the equivalent of one in which the taxpayer in the year 1936, without entering into a previous contract fixing the amount of compensation, had employed a transposition expert for one day and, when he completed his work, had paid him 5 shares of duPont stock having market value at that time of $500 but which it had bought in a previous year for $100. There can be no doubt that, from such a transaction, taxpayer would have a taxable gain. And so here.

The order of the Tax Court is affirmed.

[5] In these cases the taxpayer paid a money claim by delivering stock. What the taxpayer received was literally neither property nor money, yet it was held that there was a taxable transaction under § 111(b).