The A. P. SMITH MANUFACTURING
COMPANY
v.
The UNITED STATES.
No. 203-61.

United States Court of Claims.
July 15, 1966.

Robert P. Weil, New York City, attorney of record, for plaintiff.

William C. Ballard, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Richard M. Roberts, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, WHITAKER, Senior Judge, and DURFEE, DAVIS, and COLLINS, Judges.

OPINION

PER CURIAM.

This case was referred to Trial Commissioner W. Ney Evans with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on March 19, 1965. Exceptions to the commissioner's report and opinion were filed by plaintiff, briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, it hereby adopts the same as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is therefore entitled to recover the difference between the tax as computed on ordinary income and the tax computed on the basis of a long-term capital gain representing the excess of the market value of the securities contributed by plaintiff to the pension fund and the cost to plaintiff of those securities. Judgment to this effect is entered for the plaintiff with the amount of recovery to be determined pursuant to Rule 47(c).

OPINION OF COMMISSIONER *

EVANS, Commissioner.

In the case of United States v. General Shoe Corporation, 282 F.2d 9 (6th Cir. 1960)[1] the corporate taxpayer had cre-

* The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 45 (a), now Rule 57(a).

1. The date of the decision was September 2, 1960. General Shoe Corporation's petition for a writ of certiorari denied, 365 U.S. 843, 81 S.Ct. 801, 5 L.Ed.2d 808 (1961).

ated, for the benefit of its employees, a pension or retirement trust which had been qualified under section 165(a), Internal Revenue Code of 1939, as exempt from taxation. During the corporate fiscal years 1951 and 1952, the taxpayer contributed assets to the trust, although it was under no obligation to do so. The assets so contributed consisted of four parcels of real estate.

On its income tax returns for 1951 and 1952, taxpayer took deductions representing the fair market values of the properties at the times they were contributed to the trust, claiming the deductions under section 23(p) of the Internal Revenue Code of 1939. The values so deducted were in excess of the cost of the properties to the taxpayer.

By letter of February 11, 1958, the Treasury Department ruled that the pension plan and trust did not meet the requirements of section 165(a) and was therefore not exempt from taxation. Thereafter, deficiencies were assessed as for capital gains on the disposition of the real estate, which deficiencies the corporation paid.

Taxpayer thereupon sued in the United States District Court [2] to recover the deficiencies. The trial court held (1) that the law does not require that the employer have a legal obligation to make contributions to a trust in order for the trust to be exempt; (2) that the ruling in 1958 that the trust did not conform to section 165(a) was an abuse of discretion, based on an erroneous view of the law and therefore of no effect; and (3) that taxpayer was entitled to the deductions as taken. On these points, the Court of Appeals was "in complete agreement."

The trial court further ruled that:

\* \* \* In contributing these properties to the trust, the plaintiff did not receive any money, and did not receive the equivalent of money since no debt or legal obligation was discharged; it did not receive any "property" having "fair market value" within the meaning of \* \* \* section [111(b) Internal Revenue Code of 1939]; and hence there was no "amount realized" from the contributions to the trust. That being the case, there was no taxable gain.

Taxpayer was therefore entitled to judgment, the trial court held, for the amount of taxes paid by it as a result of the erroneous assessment of capital gains taxes on the contributions of real estate to the trust.

The Court of Appeals disagreed with the trial court's conclusion that there was no taxable capital gain, reversed the decision, and vacated the judgment of the court below. Following are pertinent excerpts from the Court of Appeals' opinion:

\* \* \* The District Court agreed with the taxpayer that it had not realized a *taxable* capital gain. We believe that this was an erroneous view of the law. We think that the rationale of International Freighting Corporation v. Commissioner of Internal Revenue, 2d Cir., 135 F.2d 310 is persuasive. \* \* \* We can hardly state the rationale of that decision better than Judge Frank did in his short succinct opinion in Freighting. When the taxpayer *here* made the contributions to the trust it was entitled to take, and did take deductions for such contributions as "ordinary and necessary" expenses. When the taxpayer evaluated the contributions on the basis of the then current market value and used those figures for its deductions, it then realized capital gain to the extent that such values exceeded its basis. There is no gainsaying this logic. The tax statutes do not operate in theory— they are practical. The disposition of the real estate by the taxpayer resulted in an "amount realized" within the meaning of Section 111(b)—

"Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market

2. For the Middle District of Tennessee.

value of the property (other than money) received."

The taxpayer realized exactly the same gain here by transferring the real estate as it would have had it sold the real estate for the fair market (or appraised) value and contributed the funds to the trust. Would the taxpayer say that if it had sold the real estate that there would have been no taxable capital gain in this situation? Can a taxpayer circumvent the capital gains tax by such a simple device? * * * In Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119, 50 S.Ct. 273, 274, 74 L.Ed. 733 Mr. Chief Justice Hughes, directing his attention to the issue of the reasonableness of extra compensation for work done, referred to payments made "as a matter of internal policy having appropriate regard to the advantage of recognition of skill and fidelity as a stimulus to continued effort." Surely the same considerations are present in relation to a plan whose purpose is as stated in the present case:

* * * * * *

The theory of economic gain comes into play. To argue, as the taxpayer does here, that there can be no gain because nothing is realized, is unrealistic. Literally the taxpayer is correct in its contention that it did not receive a tangible benefit * * * however, we do not conceive that in this day and age we are restricted to tangibles in tax matters where there is actual recognizable benefit, albeit intangible, the taxation of which is implicit in the statutory scheme, and where such benefit is clearly capable of being evaluated on an objective basis. * * * The value of what was given up here bears a direct relationship to the fair value of the "property" received. The

"property" received an economic gain to the taxpayer of exactly the market or assessed valuation which the taxpayer used as a deduction on its income tax returns. * * * We experience no difficulty in accepting as the fair market value of the property received by the taxpayer the appraised valuation which the taxpayer took as a deduction on its income tax returns. * * *

In accordance with the foregoing reasoning, we are of the opinion that the determination of the District Court that the taxpayer did not realize a taxable gain when it made the transfers and took the deduction for their fair market value was an erroneous one. * * *

In the instant case, the corporate taxpayer had created, for the benefit of its employees, a pension or retirement trust which had been qualified under section 165(a), Internal Revenue Code of 1939, as exempt from taxation. During the calendar tax years of 1954 and 1955, the taxpayer contributed assets to the trust, although it was under no obligation to do so. The assets so contributed consisted of shares of stock in other corporations which taxpayer had previously purchased and which it held as investments.

On its income tax returns for 1954 and 1955, taxpayer took deductions representing the fair market value of the securities at the times they were contributed to the trust, claiming deductions under section 404(a) of the Internal Revenue Code of 1954. The values so deducted were in excess of the cost of the securities to the taxpayer.[3]

The Commissioner of Internal Revenue determined[4] that taxpayer realized ordinary income in both years in amounts representing the difference between the

3. Taxpayer did not report as income (either as ordinary income or as capital gain) the difference between the cost of the securities and their market value at the time of contribution. The same was true, apparently, with respect to the real estate contributed by General Shoe Corporation.

4. The determinations were explained in a statement accompanying the Commissioner's 90-day letter dated December 2, 1958, which was 21 months prior to the decision in United States v. General Shoe Corporation, supra.

market value of the securities and their cost to taxpayer, and assessed deficiencies on these amounts.[5] The corporation paid these deficiencies,[6] and now sues to recover them.[7]

Defendant, in its brief to the commissioner, concludes that "the income in question," i. e., the excess of market value over cost, should be treated as a realized and recognized capital gain. To this extent, defendant concedes the point to plaintiff that if the transfer of the securities (which were, admittedly, capital assets and not stock in trade) resulted in the realization by plaintiff of any gain, that gain was capital gain and not ordinary income.

Plaintiff, however, is not content with this concession. Its brief concludes that "plaintiff should have judgment as prayed in the petition," and the petition demands judgment for the full amount of the deficiencies (plus interest) for both years.[8]

Similarities between the case of the General Shoe Corporation and the instant case include the following:

In each instance, the corporate taxpayer had created, for the benefit of its employees, a pension or retirement trust which had been qualified as tax exempt under section 165(a) of the Internal Revenue Code of 1939.

In each instance, during 2 tax years, taxpayer contributed assets to the fund, although it was under no obligation to do so.

In each instance, the assets so contributed were held as investments and had market value at the time of contribution in excess of their cost to the taxpayer.

In each instance, the taxpayer claimed deductions of the market value of the assets as ordinary and necessary expenses.

In each instance, the Government's position is that taxpayer realized a taxable capital gain measured by the excess of market value over cost.

Among the dissimilarities between the instant case and that of the General Shoe Corporation, the fact that the assets contributed by the taxpayer in the present case consisted of securities while those contributed by the General Shoe Corporation consisted of parcels of real

5. Alternatives were stated in the determinations to the following effect:

(1) If it is held that income was not realized by reason of the benefit utilized by such transfer, the deduction claimed under section 404(a) for the contribution should be limited to an amount equal to the sum of the cash contribution plus the [cost] basis of the investment securities.

(2) In the alternative, it has been determined that the transfer of investment securities having a fair market value in excess of their [cost] basis resulted in a long-term capital gain.

6. Payment was made on December 4, 1959.

7. The action was filed on May 22, 1961, 7 months after the decision in United States v. General Shoe Corporation, supra.

8. Plaintiff further asserts in its reply brief that "the applicable rules of law require judgment for plaintiff *as demanded in the petition*" [emphasis supplied]. The petition demands judgment on the first count (1954) for $34,799.62

and on the second count (1955) for $21,450.82. In a stipulation of facts filed at pretrial, the parties agreed (1) that these were the amounts set forth in plaintiff's amended claims for refund, filed December 4, 1959; (2) that such amounts represent the totals of deficiencies assessed, plus interest; (3) that portions of the total deficiencies were based on adjustments set forth in paragraphs designated (a), (b), and (d) in the Commissioner's statement; and (4) that plaintiff does not dispute the correctness of those adjustments, but "does dispute the correctness of the adjustments (and the portion of the deficiencies applicable thereto) designated (c) in the * * * statement, for both years in suit."

Inasmuch as the parties have further stipulated, with the approval of the commissioner, that the trial in the first instance shall be limited to the issues of law and fact relating to the right of the plaintiff to recover, the circumstances recited above will be pertinent to further proceedings, if any, to determine the amount of recovery.

estate is a distinction without a difference.

The only dissimilarity of possible significance is that the contributions by the General Shoe Corporation were made while the Internal Revenue Code of 1939 was in effect,[9] whereas the Internal Revenue Code of 1954 governs the situation of the present plaintiff.[10]

While extensive rearrangement of tax provisions and many changes in language were effected in the 1954 Code as compared to the 1939 Code, examination of the pertinent provisions reveals no changes in substantive law which would make a difference as between the instant case and that of the General Shoe Corporation. Neither plaintiff nor defendant so contends.[11]

Under these circumstances, the instant case and the case of the General Shoe Corporation are, in my opinion, on all fours, and the former is controlled by the latter.

Plaintiff was and is cognizant, of course, of the decision in United States v. General Shoe Corporation. Its brief to the commissioner says (p. 64) that that decision—

> * * * will not support a judgment for the Government here because the case does not decide whether a contribution in property to a self-administered, fixed benefit pension plan constitutes a transaction closed and completed during the year of contribution and so capable of generating taxable gain as assessed by the Commissioner of Internal Revenue.

Following are further recitations in plaintiff's brief to the commissioner related to the General Shoe Corporation case:

> * * * no case which counsel has been able to discover decides whether gain is realized precisely on the factual situation here obtaining, namely whether a contribution on account of the undertermined cost of expected employee annuities is a closed and completed transaction where in exchange for the expectation of these annuities, the employer has received an increment of employment advantage without market value. * * * that question, unfortunately, was neither discussed nor decided in United States v. General Shoe Corp. * * *.[12]

Again, at p. 79:

> In United States v. General Shoe Corp., supra * * * [n]othing in the opinion tells us whether this was a fixed benefit plan or a money purchase plan, i. e., whether the increment of employment advantage deriving from a fixed benefit plan was bestowed in exchange for benefits whose costs were unknown in the taxable year, with contributions merely deposits on account, or whether under a money purchase plan, contributions were in fact exchanged for the increment of employment advantage in a series of annual closed and completed transactions. * * *

Once more, at p. 81:

> * * * Plaintiff submits that *General Shoe* is not a precedent here because in *General Shoe* there was no determination of the question of fact or of the mixed question of fact and law as to whether, in funding a volun-

---

9. The pertinent provisions of the Internal Revenue Code of 1939 are: section 23(a) (1) (A); section 23(p) (1); and section 111(b). See: Title 26, United States Code, 1952 ed.

10. The pertinent provisions of the Internal Revenue Code of 1954 are: section 162 (a) (1); section 404(a) (1); and section 1001(b). See: Title 26, United States Code, 1958 ed.

11. In excerpts quoted from the opinions in International Freighting Corporation,

Inc. v. Commissioner of Internal Revenue, 135 F.2d 310 (2d Cir. 1943) and United States v. General Shoe Corporation, supra, both of which were controlled by the 1939 Code, defendant, in its brief to the commissioner, has substituted (for the sections of the 1939 Code cited by the court) the comparable sections of the 1954 Code.

12. Plaintiff's brief, p. 74.

tary, fixed benefit, self-administered pension plan, the employer's contribution is part of a transaction closed and completed in the taxable year, so as to realize gain or loss.

For two other reasons it is submitted that United States v. General Shoe Corp., supra, ought not to be followed here. In the first place the court reasoned that General Shoe's contribution being for a business purpose, the act of making the contribution realized to the employer the appreciation in the contributed property, under Helvering v. Horst [311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655 (1940)] * * * [which] does not apply * * * here * * *. In the second place the court assumed that the before-tax effect of sale of the plants and contribution of the proceeds of sale would have been the same as the before-tax effects of the contribution of the plants directly to the pension fund and that therefore and thereby General Shoe became obligated to pay the tax which would have been generated by the sale. * * * If the taxpayer had sold the plants for cash, that would have constituted a closed and completed transaction on which the taxpayer would have realized gain or loss * * *. On the other hand, conveyance of the plants to the pension fund would have had no tax effect if the transaction was not closed and completed in the taxable year. * * *

And finally, at p. 83:

* * * In the *General Shoe* case, the District Court held that the properties had been validly contributed. * * * This conclusion the Court of Appeals affirmed. * * * In the premises, it was error for the Court of Appeals to fail to accord to the transaction its full tax consequences as prescribed by Congress.

In summary, plaintiff's contentions (in inverse order) are: (1) that the decision (by the Court of Appeals) in *General Shoe* was wrong; and (2) that, in any event, that decision is not controlling here because of the failure of the court to consider and decide whether, in the funding of a voluntary, fixed benefit, self-administered pension plan, the contribution by the employer is part of a transaction closed and completed in the taxable year. Plaintiff contends that neither of its contributions was part of a transaction closed and completed during the taxable year because each was a contribution on account of the undetermined cost of expected employee annuities; and further that, as a result of each contribution, the employer received an increment of employment advantage without market value.

At the trial of the case plaintiff presented extensive evidence (some of it over objection by defendant) tending to show (1) the nature of the trust as a voluntary, fixed benefit, self-administered pension plan; (2) the effect of these characteristics upon (a) the management of the plan by the trustee, (b) the participation in the plan by the employees, and (c) the accounting by the employer for its contributions; and (3) the logic of the corollaries (a) that the cost of expected employee annuities was unknown at the time of the contribution and could not be determined for 40 to 70 years and (b) that the increment of employment advantage to the employer arising from the contribution therefore had no market value.

On the basis of such evidence, plaintiff has requested findings of fact covering 55 typewritten pages in support of the following "summary findings":

87. Neither of plaintiff's contributions in securities to its pension fund in 1954 or 1955 was part of a sale or exchange between plaintiff and the pension fund or the pension trustee.

88. Any increment of employment advantage which accrued to plaintiff during each of the years 1954 and 1955 in respect of the pension plan accrued to plaintiff by reason of the expectation of the benefits which accrued under the plan, not by reason of plaintiff's contributions during those years. Such increments had no market value.

89. The pension benefits which accrued under the plan in 1954 and 1955 were not the liability of plaintiff or of the pension fund or of the pension trustee or of any other person, firm or corporation. Those benefits had no market value.

90. The cost of the pension benefits which accrued during 1954 and 1955 were unknown to plaintiff, and could not be known during those years, since they depended on events which would not take place until 40–70 years thereafter.

On the basis of the foregoing findings of ultimate fact, plaintiff's brief asks for conclusions of law to the effect (1) that plaintiff realized no gain in respect of the contributions which it made to its pension fund during 1954 and 1955; (2) that the amount deductible by plaintiff as contributions to its pension fund in 1954 and 1955 were, respectively, $89,459 and $49,845.50; and (3) that plaintiff is therefore entitled to judgment.

While the writer agrees (1) that plaintiff is entitled to judgment (for the difference in taxation as between ordinary income and capital gain) and (2) that the amounts deductible by plaintiff as contributions to its pension fund are as recited by plaintiff, he does not agree that plaintiff realized no gain in respect of the contributions.

Neither does the writer agree that the extensive findings of subsidiary facts requested by plaintiff in support of these refinements are germane to the issue. For this reason, such subsidiary facts have been omitted from the findings contained in this report.[13] Several of plaintiff's contentions on points of law have been likewise omitted from the legal analysis in this opinion.

There are three reasons for this short cut to decision, in addition to the inherent concession to the shortness of life.

The first reason is that, since "[t]he tax statutes do not operate in theory—they are practical," [14] plaintiff's reasoning borders on the esoteric. For example, its reply brief contains the following statement: [15]

\* \* \* The concept of a closed and completed transaction expresses one of the requirements for the realization of gain or loss on the sale or conversion of capital assets, to which type of transaction the concept of ordinary and necessary business expense, including a pension plan contribution, is inapplicable.

Here, as in United States v. General Shoe Corporation, supra,[16] and in International Freighting Corporation, Inc. v. Commissioner, supra:

\* \* \* When the taxpayer \* \* \* made the contributions to the trust it was entitled to take, and did take deductions for such contributions as "ordinary and necessary" expenses. When the taxpayer evaluated the contributions on the basis of the then current market value and used those figures for its deductions, it then realized capital gain to the extent that such values exceeded its basis. *There is no gainsaying this logic.* \* \* \* [Emphasis supplied.]

The second reason is that, as I read the relevant precedents, the completion and closing of the transaction within the taxable year is inherent in the allowance of the deductions as "ordinary and necessary" expenses.[17]

The third, and most compelling reason, is that the logic of plaintiff's rea-

13. The findings of fact contained in this report are predicated on the findings requested by defendant which, in turn, were largely based upon the parties' stipulation of facts.

14. United States v. General Shoe Corporation, supra, 282 F.2d at p. 12. Cf. International Freighting Corporation, Inc. v. Commissioner of Internal Revenue, 45

B.T.A. 716, 720 (1941), aff'd, 135 F.2d 310 (2d Cir. 1943).

15. P. 8.

16. At p. 12.

17. In addition to United States v. General Shoe Corporation, supra, and International Freighting Corporation, Inc. v. Commissioner of Internal Revenue, supra,

soning leads inexorably to the conclusion that if, as plaintiff contends, plaintiff received in return for its contributions only "an increment of employment advantage without market value," plaintiff's initial position vis-a-vis the deductibility of the contributions as "ordinary and necessary" expenses is placed in jeopardy.

Plaintiff cannot have it both ways, viz, that a substantial contribution by it is deductible as an ordinary and necessary expense of carrying on its business, in return for which it has now received an advantage but that the value of such advantage cannot be determined until after the lapse of some 40 to 70 years.

 To paraphrase a sentence from United States v. General Shoe Corporation, supra, a taxpayer cannot circumvent the capital gains tax by a device, simple or complex. As in that case, so here—

* * * The theory of economic gain comes into play. To argue, as the taxpayer does here, that there can be no gain because nothing is realized, is unrealistic. Literally the taxpayer is correct in its contention that it did not receive a tangible benefit * * * however, we do not conceive that in this day and age we are restricted to tangibles in tax matters where there is actual recognizable benefit, albeit intangible, the taxation of which is implicit in the statutory scheme * *.

In recognizing contributions to a pension fund as compensation for services actually rendered, within the meaning of the statute, the courts have gone as far as they are likely to go, or as they should go, in a situation of this kind. Further refinements upon the returns to be realized by the employer from the contributions, at least in terms of postponement of realization for tax purposes into the indefinite future, as plaintiff would have done here, would, in my opinion, place

an unwarranted and unacceptable strain upon the recognition which the courts have so far extended.

Under the decided cases plaintiff is entitled to deduct the amount of its contributions to the pension fund but, in doing so, it must recognize that it realized a taxable capital gain to the extent of the excess of the market value of the securities contributed over the cost to it of those securities.

cf. Charles E. Smith & Sons Co. v. Commissioner of Internal Revenue, 184 F.2d 1011, 1014 [4, 5] (6th Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951); and General Electric Company v. United States, 299 F.2d 942, 156 Ct.Cl. 617 (1962), cert. denied, 371 U.S. 940, 83 S.Ct. 319, 9 L.Ed.2d 275.