**TASTY BAKING COMPANY**

v.

**The UNITED STATES.**

**No. 289–66.**

United States Court of Claims.
May 10, 1968.

Daniel Mungall, Jr., Philadelphia, Pa., attorney of record for plaintiff. Daniel S. Knight, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., of counsel.

Richard J. Boyle, Washington, D.C., with whom was Asst. Atty. Gen., Mitchell Rogovin, Philip R. Miller, Washington, D.C., of counsel, for defendant.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

NICHOLS, Judge.

This case is before us on cross-motions for summary judgment. The facts are stipulated.

Plaintiff, a manufacturer and seller of a variety of small cakes and pies, employs 1,500 people. On December 1, 1952, plaintiff adopted and instituted for its full-time employees a noncontributory pension plan. This plan met the applicable requirements of Section 165(a) of the Internal Revenue Code of 1939, as amended. In 1960 a trust was established to enable investment diversification of plaintiff's contributions to the pension fund. The pension plan and trust concededly met the applicable requirements of Section 401(a) of the Internal Revenue Code of 1954.[1] The terms of the pension plan did not impose on plaintiff a legal or formal obligation to make contributions to the pension trust nor was plaintiff subject to collective bargaining agreements relating to the continuation of pension benefits. The terms of the plan gave plaintiff the right to discontinue it at any time. However, in that event plaintiff would not be entitled to recover any contributions previously made and all benefits would fully vest in the participating employees. The controversy at hand grows out of a contribution of property made by the plaintiff to the pension trust.

Plaintiff's executive offices and manufacturing facilities were housed in a building located on approximately 3 acres of land in Philadelphia, Pennsylvania.

On December 1, 1960, plaintiff made a contribution of this property to the pension trust. On that date the property had a fair market value of $2,000,000 and plaintiff's basis for it was $1,022,690.41.

In its income tax return for the taxable year ending December 31, 1960, plaintiff, under the conditions set forth in Section 404, as amended,[2] was able to take a deduction from ordinary income with respect to the property contributed in the amount of $450,485. For its taxable year ending December 30, 1961, plaintiff's deduction attributable to the contribution made in 1960 was $616,485; for the taxable year ending December 29, 1962, its deduction was $627,485; and for the taxable year ending December 28, 1963, its deduction was $305,545. Due to the provisions of Section 404, it took plaintiff 4 years to deduct the full $2,000,000 contribution. The propriety of these deductions is not an issue in this case.

Upon audit of the plaintiff's 1960 return, the Commissioner of Internal Revenue determined, *inter alia,* that plaintiff realized a capital gain upon the transfer of the property to the pension trust, the gain to be measured by the difference between the fair market value of the property and the plaintiff's basis therein. Plaintiff paid the resulting deficiency and, its timely refund claim not having been acted upon by the Commissioner at the time this suit was filed, plaintiff brought suit in this court for the refund claimed.[3]

In A. P. Smith Manufacturing Co. v. United States, 364 F.2d 831, 176 Ct.Cl. 1074 (1966), cert. denied 385 U.S. 1003, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967), the taxpayer-employer had created a pension trust for its employees. The pension trust was so qualified under

---

1. All future Code references are to the Internal Revenue Code of 1954.

2. See Appendix.

3. Also raised in the plaintiff's refund claim was the propriety of an additional allowance for depreciation with respect to the contributed property for its taxable year ending December 31, 1960. The parties have stipulated that the plaintiff was entitled to this allowance and that issue is not before us.

the Internal Revenue Code as to permit the employer to deduct the amount of its contributions to the trust for income tax purposes. We held that when a contribution was made to the pension trust of a capital asset, the employer realized a capital gain measured by the difference between the fair market value of the property (the same valuation given it by the employer for deduction purposes) and the employer's basis for that property.[4] Accord, United States v. General Shoe Corp., 282 F.2d 9 (6th Cir. 1960), cert. denied 365 U.S. 843, 81 S.Ct. 801, 5 L.Ed.2d 808 (1961); see International Freighting Corp., Inc. v. Commissioner of Internal Revenue, 135 F.2d 310 (2d Cir. 1943). The underlying rationale would appear to be that though no money or other tangible property was received by the taxpayer-employer, the property contributed was additional compensation for the employees' past and present services, with the *quid pro quo* being those services, plus the expectation of continued services in the future. The value of those services has been held to be presumably equal to the fair market value of the property contributed. International Freighting Corp., Inc., supra, at 313.

The property contributed in the case at bar was not a capital asset (see Section 1221(2)). However, its inclusion under Section 1231(b) (1) would, in this case, result in its taxable disposition at a gain being a capital gain.

The plaintiff argued that in contributing its operating premises to the pension trust it did not realize taxable gain to the extent that the fair market value of that property exceeded plaintiff's tax basis therein. Plaintiff also argued it did not receive any money or other property in return for that contribution. At most, plaintiff argued, the only way open to the court to find plaintiff had an "amount realized" (see Section 1001 (b) in the appendix) was to equate the term "other property" to the value of the plaintiff's mere entitlement to take

a deduction for the contribution. Under this theory, the fair market value of the property received would be the tax saving resulting from the deduction of the contribution. At a 52% tax rate in the year of the contribution the tax saving to plaintiff would have been $1,-040,000. Therefore, argued plaintiff, its gain would only be $17,309.59 (tax saving minus basis) and not $977,309.59 as it would be under the decision in *A. P. Smith Manufacturing*. To these arguments the Government countered by asking us to follow our decision in *A. P. Smith Manufacturing*. The Government argued that the property received by the plaintiff was not the deduction for the contribution, but, instead, the value of the employee's services, that being measured by the fair market value of the property contributed. Also, that the tax deduction is merely a result of the contribution; it is merely the plaintiff's own reaffirmation of the value of the services and of the reasonableness of the contribution as a *quid pro quo*. In making its arguments, plaintiff felt forced to ask us to "re-examine" *A. P. Smith Manufacturing* and not to follow United States v. General Shoe Corp., relied on by us in *Smith*. We do not think the arguments made by plaintiff persuasive and we reaffirm our holding in *A. P. Smith Manufacturing*, for the reasons stated therein. Our reconsideration convinces us that the matter is so far settled by higher authority that we would not be free to overrule *Smith* even if persuaded —as we are not persuaded—that its reasoning is incorrect.

In United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), the Supreme Court held, reversing this court, that a husband realized a capital gain on the excess of market value over basis, of stock he transferred to his wife in fulfillment of a voluntary property settlement and separation agreement. It held that for purposes of measuring the gain, the rights surrendered by the wife, inchoate and unmarketable as they were,

---

4. See Appendix for Code Sections 1001, 1002, 1011 and 1012.

must be presumed to equal the stock in value. It cited, at p. 72, 82 S.Ct., at p. 1194, our holding in Philadelphia Park Amusement Co. v. United States, 126 F. Supp. 184, 189, 130 Ct.Cl. 166, 172 (1954), that the values "of the two properties exchanged in an arms-length transaction are either equal in fact, or are presumed to be equal". And it cited as in accord, *General Shoe Corp.*, supra, and *International Freighting Corp., Inc.*, supra. *General Shoe* involved contributions to a pension trust like the one at bar, and *International Freighting Corp., Inc.* involved bonuses given directly to employees, consisting of stock in a related corporation. It is clear, therefore, that the technique of presuming an intangible and unappraisable contribution as an equal exchange for property transferred is to be applied to a variety of situations broad enough at least to include a taxpayer who desires the separation of a wife, and one who wishes the continued adhesion of an employee. Judge Frank reasoned in International Freighting Corp., Inc., 135 F.2d at p. 313, that the bonuses would have been invalid if they had exceeded the worth of the employee's services. That is applicable in the business situation such as we have here, if we add: "services past and future." In *International Freighting* the bonuses influenced future behavior only as a morale factor, but any pension plan gives an employee a pecuniary incentive to remain with the employer until retirement. The citation of these cases with approval in *Davis* would seem to establish the doctrine too firmly to be tampered with by us.

Some additional arguments made by the plaintiff require further discussion. It has cited to us Rev.Rul. 55–410, 1955–1 C.B. 297. In that ruling the Internal Revenue Service recognized that the mere fact that a taxpayer obtains a deduction in the amount of the fair market value of property contributed by it to a charitable organization in satisfaction of a pledge, does not subject the taxpayer to taxation on the excess of that fair market value over the taxpayer's basis

for that property. From this the plaintiff argued "[I]t is difficult to fashion an acceptable rationale for a difference in treatment between the charitable contribution and the contribution here merely because the parties in this situation are operating in the commercial field." The distinction to be drawn is not a difficult one. The cited ruling deals with a gift; the plaintiff's contribution was not a gift. See also United States v. Davis, supra, footnote 6 at 370 U.S. p. 69, 82 S.Ct. 1190. In the cited ruling the Internal Revenue Service said: "It would be inconsistent to treat such payment or transfer as a 'contribution or gift' and at the same time as a satisfaction of a debt with the tax consequences which would ordinarily follow from the use of appreciated property * * * to pay a debt." There is no inconsistency where the contribution is not a gift but is made for business, not eleemosynary, reasons. The charitable donor does not expect an economic *quid pro quo,* or at least is presumed not to.

■ Thus we hold plaintiff recognized a capital gain upon its contribution of property to the pension trust, that gain being measured by the difference between the fair market value of that property and plaintiff's tax basis therein. Plaintiff argued it was entitled to the benefits of the installment sales provision (Section 453) of the Code in reporting that gain. It urged also that the amount received in each year was only the amount of its deduction in that year. These contentions suffer from the same defect as plaintiff's "amount realized" argument. The amount of the deduction is not the measure of the amount received. As the *Davis* case, supra, makes clear, the *quid pro quo* in the exchange is not the deduction but the anticipated better behavior of the employees covered by the pension plan. Thus it makes no discoverable difference whether the deduction for the contribution to the trust is taken over one year, or several, or never taken at all. There was obviously no deduction in *Davis.* The gain here at issue was realized in 1960, the date

of the transfer, and not at any other time. Accordingly, the installment sales provision is not available to the plaintiff because it realized all of its gain in the year the contribution was made.

In accordance with the foregoing, the defendant's motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied. The petition is dismissed except as to the claim for an allowance for depreciation. The case will be remanded under Rule 47(c) for a determination of the amount of refund due the taxpayer in accordance with the decision herein and the parties' stipulation regarding the additional depreciation deduction.

### APPENDIX

INTERNAL REVENUE CODE OF 1954:

(26 U.S.C. Sec. 404, 1964 ed.)

SEC. 404 DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) ; but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

(1) PENSION TRUSTS.—In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt

under section 501(a), in an amount determined as follows:

(A) an amount not in excess of 5 percent of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Secretary or his delegate upon periodical examinations at not less than 5-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus

(B) any excess over the amount allowable under subparagraph (A) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Secretary or his delegate, but if such remaining unfunded cost with respect to any 3 individuals is more than 50 percent of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years, or

(C) in lieu of the amounts allowable under subparagraphs (A) and (B) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary or his delegate, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 percent of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, as determined under regulations prescribed by the Secre-

tary or his delegate, except that in no case shall a deduction be allowed for any amount (other than the normal cost) paid in after such pension or annuity credits are completely funded or purchased.

(D) Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year in accordance with the foregoing limitations.

(As amended by Sec. 24, Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606).

---

(26 U.S.C. Sec. 162, 1964 ed.)

## SEC. 162 TRADE OR BUSINESS EXPENSES.

(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

\*    \*    \*    \*    \*    \*

---

(26 U.S.C. Sec. 1001, 1964 ed.)

## SEC. 1001 DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS.

(a) *Computation of Gain or Loss.*—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) *Amount Realized.*—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. In determining the amount realized—

(1) there shall not be taken into account any amount received as reimbursement for real property taxes which are treated under section 164(d) as imposed on the purchaser, and

(2) there shall be taken into account amounts representing real property taxes which are treated under section 164(d) as imposed on the taxpayer if such taxes are to be paid by the purchaser.

(c) *Recognition of Gain or Loss.*—In the case of a sale or exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under section 1002.

(d) *Installment Sales.*—Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received.

---

(26 U.S.C. Sec. 1002, 1964 ed.)

## SEC. 1002 RECOGNITION OF GAIN OR LOSS.

Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized.

---

(26 U.S.C. Sec. 1011, 1964 ed.)

## SEC. 1011 ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter

and subchapter C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses)), adjusted as provided in section 1016.

(26 U.S.C. Sec. 1012, 1964 ed.)

SEC. 1012  BASIS OF PROPERTY —COST.

The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). The cost of real property shall not include any amount in respect of real property taxes which are treated under section 164(d) as imposed on the taxpayer.