**Dallas C. WOOD, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellant.**

No. 91–1717.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1991.

Decided Jan. 31, 1992.

Kenneth L. Greene, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Steven W. Parks, Tax Div., U.S. Dept. of Justice, on brief), for respondent-appellant.

Robert Gerald Nath, Odin, Feldman & Pittleman, P.C., Fairfax, Va., argued, for petitioner-appellee.

Before WIDENER and NIEMEYER, Circuit Judges, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

Section 4975 of the Internal Revenue Code imposes an excise tax on any "disqualified person" who participates in a "prohibited transaction" with a qualified defined benefit plan created under ERISA. We are presented with the question of whether the assignment of third-party promissory notes by a disqualified person to a plan in discharge of a funding obligation is a prohibited transaction. The Tax Court determined that it was not. The Commissioner of Internal Revenue appeals, viewing the transaction as a "sale or exchange" of property that is prohibited by 26 U.S.C. § 4975(c)(1)(A) (1988). We agree and therefore reverse.

### I

During the years in issue, Dallas Wood was a self-employed real estate broker in Fairfax County, Virginia. As permitted by ERISA, Wood adopted the Dallas C. Wood Defined Benefit Plan ("the plan"), effective January 1, 1984. While Wood is the plan's sole participant and serves as plan administrator and trustee, he relied on an actuary to establish, fund, and operate the plan. The plan, which is subject to the ERISA minimum funding requirements of 26 U.S.C. § 412, permits the receipt of non-cash contributions in satisfaction of its funding requirements. As calculated by the actuary, applying an "aggregate level cost method," the cost of funding the plan for the year which ended December 31, 1984 was $114,000.

In order to meet this funding obligation, Wood contributed three promissory notes with face values totalling $114,000. One note in the face amount of $60,000 made payable to Wood was received by him in

1983 when he sold his principal residence. The remaining two notes, in the face amounts of $39,000 and $15,000, were executed by purchasers in real estate transactions in which Wood acted as a broker. He purchased these notes at a discount for $32,000 and $11,250, respectively. The notes were transferred to the plan "without recourse" in 1984 and 1985, and by 1986 they all were paid in full.

On his 1984 Federal income tax return, Wood claimed a deduction of $114,000, representing the combined face amount of the notes he contributed to the plan, although the total fair market value of the notes at the time they were transferred to the plan was only $94,430. Wood did not report any gain as a result of this transfer. The parties have now stipulated, however, that the contribution of the notes was a recognition event for income tax purposes and have agreed that Wood was, and is, required to report as capital gains the difference between the face value of the notes and his basis in the notes.

In 1988 the IRS issued a notice of deficiency, having determined that Wood was liable for excise taxes under 26 U.S.C. § 4975(a) in the amount of $3,000 for 1984, $5,700 for 1985, and $5,700 for 1986, representing five percent of the third-party notes contributed as of each of those years. The IRS also imposed penalties for failure to pay the taxes timely.

Wood challenged the determinations of the IRS by filing a petition with the Tax Court for redetermination of the deficiency. The Tax Court agreed with Wood and held that Wood's contribution of third-party promissory notes to the plan was not a prohibited transaction within the meaning of § 4975(c) and that therefore he was not liable for excise taxes. It reasoned that there is nothing in the Code which precludes the *contribution* of non-cash property to fund a pension trust. As the Tax Court stated:

> In summary, we conclude that nothing in ERISA changes prior law permitting transfers of property to a pension trust. We believe that, if such a change had been intended, Congress would have said

so directly rather than by the imposition of a tax under section 4975.

This appeal followed.

## II

■ The Employee Retirement Income Security Act of 1974 (ERISA) was enacted in response to the enormous growth and development of private pension systems, and reflects the congressional concern that certain safeguards be imposed to provide adequate retirement security for plan participants and their beneficiaries. *See* Pub.L. No. 93–406, 88 Stat. 829, 832–33 (1974). It is a comprehensive remedial scheme designed to protect the pensions and benefits of employees by addressing not only the "malfeasance and maladministration in the plans, or the consequences of lack of adequate vesting, but also ... the broad spectrum of questions such as adequacy of [plan] funding" to pay promised benefits. H.R.Rep. No. 533, 93d Cong., 1st Sess. 910 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4647–4648.

■ As part of Title II of ERISA, which is administered by the Internal Revenue Service, Congress enacted a prohibited transactions rule to prevent persons with a close relationship to a plan from using that relationship to the detriment of plan beneficiaries. Section 4975 of the Internal Revenue Code imposes two levels of excise tax on "any disqualified person who participates in [a] prohibited transaction." 26 U.S.C. § 4975(a), (b). It expressly prohibits the direct or indirect:

(A) sale or exchange, or leasing of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person;

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. § 4975(c). There is no dispute in this case that Wood is a disqualified person. *See* 26 U.S.C. § 4975(e)(2). The primary point of contention is whether Wood's contribution of third-party promissory notes to the plan is a sale or exchange of property, and thus a prohibited transaction within the meaning of § 4975(c).

The Commissioner contends that the taxpayer's contribution of third-party promissory notes in satisfaction of the statutory funding obligation is a sale or exchange within the meaning of § 4975(c). He argues that the term "sale or exchange" should be given the same meaning as it is given throughout the Tax Code, including the common notion that a transfer of property in satisfaction of indebtedness constitutes a "sale or exchange" of property. *See, e.g., Rogers v. Commissioner,* 103 F.2d 790, 792–93 (9th Cir.), *cert. denied,* 308 U.S. 580, 60 S.Ct. 98, 84 L.Ed. 486 (1939). Furthermore, the Commissioner argues that transferring property to the plan in satisfaction of an obligation to fund the plan is no different from satisfying the obligation with cash and then causing the plan to use the cash to purchase the property. The Commissioner observes that this interpretation is consistent with the legislative history and the interpretation given to 29 U.S.C. § 1106, a parallel provision in the portion of ERISA administered by the Department of Labor.

Wood acknowledges that § 4975 prohibits sales and exchanges between him and the plan in some circumstances. He readily agrees that if he had funded the plan with cash and then caused the plan to use the cash to purchase the third-party promissory notes from himself, the transaction would be prohibited by § 4975(c). He con-tends, however, that the prohibition applies only to the *operation and management* of a defined benefit plan, and does not pertain to *contributions* of property to fund the plan. He argues that under the structure of the Tax Code, §§ 4971, 4972, 4973 and 4979 address "the contribution phase" of a plan, imposing taxes for insufficient or improper contributions. Sections 4974 and 4975 (involved here) regulate the "operational phase," imposing taxes on improper management or improper transactions during the course of operations. And finally, he notes that §§ 4976 through 4980B, with the exception of § 4979, govern the "distribution phase" of a plan. In further support of his structural argument that § 4975 does not apply to contributions, Wood points out that § 4975 nowhere uses the word "contribution." If Congress intended the section to apply to non-cash contributions, he asserts, it would have said so as it did in sections specifically applicable to the contribution phase.

Alternatively Wood argues that his contribution of third-party promissory notes did not constitute a sale or exchange because § 4975(f)(3) limits the definition of "sale or exchange" to transfers of *encumbered* property. He observes that the Commissioner's interpretation would prohibit funding any plan with stocks, bonds, or any readily salable assets, regardless of their safety, a result that Wood suggests is irrational. Finally, Wood contends that § 4975 must be interpreted in a manner consistent with 26 U.S.C. § 404, which permits him to claim income tax deductions for non-cash contributions to his employee benefit plan.

▋ It was clearly the intent of Congress to prohibit categorically disqualified persons from entering into specified transactions with the plans they sponsor, as such dealings are susceptible to abuse and put in jeopardy the plan's ability to pay promised benefits. Prior to the enactment of § 4975, prohibited transactions rules relied on an "arm's-length" standard of conduct, which "require[d] substantial enforcement efforts, resulting in sporadic and uncertain effectiveness of these provisions."

S.Rep. No. 383, 93d Cong., 1st Sess. 32 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4917. In specifying several categories of transactions that would be subject to the excise tax, Congress intended to displace the "arm's-length" standard with a per se rule which would "substantially strengthen" the laws governing prohibited transactions. *Id.* The purpose of designating sales and exchanges of property between insiders and pension plans as prohibited transactions was to ensure pension plan integrity by eliminating even the possibility that such sales or exchanges might not be at arm's length. *See Donovan v. Cunningham*, 716 F.2d 1455, 1464–65 (5th Cir.1983) (interpreting 29 U.S.C. § 1106, a parallel prohibited transaction provision in Title I of ERISA), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). Thus, the prohibition against sales or exchanges of property between a plan and a disqualified person is intended to avoid the potential for overvaluations of property to the detriment of the plan, precisely as occurred in this case when Wood purported to discharge a $114,000 obligation with third-party promissory notes having a value of only $94,430. The implementation of this purpose would suggest that all sales or exchanges with the plan by disqualified persons should be prohibited, whether as a contribution or during the operation of the plan.

Wood's structural argument, that the excise tax provisions are organized according to certain phases in a plan's existence and that § 4975 applies only to transactions occurring during the so-called "operational phase," finds little support in the Code. Wood labels §§ 4971, 4972, 4973, and 4979 as sections which apply only to a plan's "contribution phase." While §§ 4971 through 4973 follow in sequence and might otherwise tend to suggest an organizational theme, § 4979 is located in the middle of what Wood labels the "distribution phase" provisions. Furthermore, the applicability of § 4971 is not limited to plan contributions. Section 4971 imposes an excise tax when there is an "accumulated funding deficiency," the existence of which is determined on the basis of the *cumulative* charges and credits to the funding standard account "for all plan years." 26 U.S.C. §§ 4971(c)(1), 412(a).

The excise tax sections applicable to pension plans are not structured in accordance with a plan's developmental phases. Rather, the provisions prohibit specific transactions, events, and circumstances that pose a significant threat to the integrity of pension plans and discourage certain benefits that were not of the type Congress favored. Section 4975(c) does not mention the words "contribution," "operation," or "distribution," but instead prohibits without qualification "*any* direct or indirect ... sale or exchange ... of any property between a plan and a disqualified person." 26 U.S.C. § 4975(c)(1) (emphasis added). Its blanket prohibition regulates transactions which occur between a plan and a disqualified person because of the potential for abuse inherent in that close relationship. It is immaterial whether the transaction involves a contribution, a distribution, or something in between. In fact, Treasury Regulation § 1.415–6(b)(4) (1981) (amended in 1991 in respects not material here) addresses the applicability of § 4975 to contributions, and provides:

> *Contributions other than cash.* For the purposes of this paragraph, a contribution by the employer or employee of property other than cash will be considered to be a contribution in an amount equal to the fair market value ... of the property on the date the contribution is made. *The contribution described in this subparagraph may, however, constitute a prohibited transaction within the meaning of section 4975(c)(1).*

(emphasis added). We therefore conclude that any sale or exchange of non-cash property between a plan and a disqualified person is a prohibited transaction, whether undertaken for the purpose of making a contribution or otherwise.

Wood contends alternatively that even if § 4975 applies to contributions, his contribution of third-party notes in discharge of his obligation to fund the plan did not constitute a "sale or exchange" as that term is used in § 4975. He argues

that § 4975(f)(3) defines only transfers of property encumbered by mortgages or liens as "sales or exchanges" under § 4975 and that therefore the transfer of *unencumbered* property (as is involved here) is not subject to the § 4975 prohibition. The recent Fifth Circuit decision in *Keystone Consol. Indus., Inc. v. Commissioner,* 951 F.2d 76 (5th Cir.1992), supports this position.

Section 4975(f)(3) states:

Sale or exchange; encumbered property.—A transfer of real or personal property by a disqualified person to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien which the plan assumes or if it is subject to a mortgage or similar lien which a disqualified person placed on the property within the 10–year period ending on the date of the transfer.

We do not view § 4975(f)(3) as a special rule limiting the applicability of the excise tax to contributions of encumbered property. On the contrary, its inclusion reveals the intent of Congress to expand the definition of "sale or exchange" as generally understood to include *all transfers* to a plan of *encumbered* property, whether or not in discharge of a debt, because transfers of encumbered property present a particularly significant potential for abuse. The expansive meaning of § 4975(f)(3) is revealed by the general use of "sale or exchange" under the Internal Revenue Code and the application of the principle that "the Code must be given 'as great an internal symmetry and consistency as its words permit.'" *Commissioner v. Lester,* 366 U.S. 299, 304, 81 S.Ct. 1343, 1346, 6 L.Ed.2d 306 (1961) (*quoting United States v. Olympic Radio & Television, Inc.,* 349 U.S. 232, 236, 75 S.Ct. 733, 736, 99 L.Ed. 1024 (1955)). Moreover, "[t]he normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning.'" *Sorenson v. Secretary of the Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986) (citations omitted). Because we find that § 4975(f)(3) serves the special need of expanding the scope of prohibition when *encumbered* property is involved, we find ourselves in

disagreement with the reasoning of the Fifth Circuit's decision in *Keystone Consol. Indus.*

The general treatment of the transfer of property in satisfaction of indebtedness as a sale or exchange for tax purposes is long-standing. *See Rogers,* 103 F.2d at 792–93; *Pender v. Commissioner,* 110 F.2d 477, 478 (4th Cir.), *cert. denied,* 310 U.S. 650, 60 S.Ct. 1103, 84 L.Ed. 1416 (1940). Although the term appears primarily in the income tax chapter, *see, e.g.,* 26 U.S.C. §§ 62, 64, 65, we are aware of no instance when the term "sale or exchange" has been used or interpreted not to include transfers of property in satisfaction of indebtedness.

We note also that the IRS has applied the generally accepted definition to the "sale or exchange" language of § 4975 and has construed the transfer of property in satisfaction of a sponsor's statutory funding obligation as a sale or exchange. *See* Rev.Rul. 80–140, 1980–1 C.B. 89. It is well-established that considerable weight is to be given to an agency's construction of a statute that it is charged with administering. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see also Rose v. Long Island RR Pension Plan,* 828 F.2d 910, 918 (2d Cir.1987) ("Because the IRS is one of the agencies charged with administering ERISA, its interpretations of the statute are entitled to great deference."), *cert. denied,* 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988).

Finally, we are persuaded by the interpretation given to a parallel ERISA provision by the Department of Labor, which is responsible for administering Title I of ERISA. The Labor Department has interpreted 29 U.S.C. § 1106, which also prohibits a plan fiduciary from engaging in a transaction that he knows or should know constitutes a direct or indirect sale or exchange of property between the party and a party in interest, to preclude the transfer of non-cash property in satisfaction of a sponsor's funding obligation. *See* Dept. of Labor Op. 81–69A (July 28, 1981); Dept. of Labor Op. 90–05A (March 29, 1990). We find it particularly noteworthy that the legislative history of § 4975 indicates that Congress intended that the prohibited transaction rules in the labor and tax titles

apply in a similar manner to like transactions. *See* H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 295–96 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 5038, 5076.

Accordingly we conclude that it is appropriate to apply the generally recognized definition of "sale or exchange" to § 4975, and, in so doing, we reject Wood's contention that § 4975(f)(3) limits this definition to transfers of encumbered property. While the transfer to a plan of unencumbered property becomes a sale or exchange only if the transfer satisfies a funding obligation, when encumbered property is involved *all* transfers to the plan are prohibited, regardless of whether they are contributed in satisfaction of a pre-existing debt.

■ As a final matter, Wood argues that the imposition of an excise tax on the contribution of property in satisfaction of indebtedness is inconsistent with 26 U.S.C. § 404 of the Code, which permits plan sponsors to claim income tax deductions for their non-cash contributions to employee benefit plans. *See Colorado Nat'l Bank v. Commissioner,* 30 T.C. 933 (1958) (holding that contributions of real property to a pension trust fund are deductible under § 404), *acq. in result,* 1959–1 C.B. 3. He alleges that because Congress permits deductions for contributions of property under § 404, it is inconceivable that it intended to impose an excise tax on these same transactions under § 4975.

The Internal Revenue Code permits deductions from gross income for ordinary and necessary business expenses paid or incurred during the taxable year, including a reasonable allowance for salaries or other compensation for personal services actually rendered. 26 U.S.C. § 162. In the absence of § 404, employee pension plan contributions would constitute business expenses deductible under § 162. Section 404, however, displaces the more general provisions of § 162 and allows deductibility, within defined limits, of plan contributions provided the contributions are otherwise deductible. *See* 26 U.S.C. § 404(a). Although the excise tax of § 4975 discourages the contribution of non-cash property in satisfaction of a sponsor's funding obligation, it does not preclude the deductibility of these contributions under § 404 because a reasonable plan contribution, in whatever form, is a business expense and remains deductible as such.

The prohibited transaction provisions of § 4975 are part of a remedial scheme designed to protect the retirement security of plan participants and beneficiaries by prohibiting certain types of transactions which are particularly subject to abuse. We are therefore hesitant to construe these protective provisions narrowly. *See Leigh v. Engle,* 727 F.2d 113, 126 (7th Cir.1984) (reading broadly the protective provisions of 29 U.S.C. § 1106 "in light of Congress' concern with the welfare of plan beneficiaries"). In addition, the very language of the section indicates that the term "sale or exchange" should not be interpreted restrictively because it applies to both direct and indirect transactions. *See* 26 U.S.C. § 4975(c).

Thus we conclude that when Wood, a concededly disqualified person, transferred non-cash property to the plan to satisfy his statutory funding obligation, he engaged in a "sale or exchange" under § 4975 and therefore is liable for excise taxes. The decision of the Tax Court dated November 16, 1990, is therefore

REVERSED.