# COMMISSIONER OF INTERNAL REVENUE *v.* KEY-STONE CONSOLIDATED INDUSTRIES, INC.

No. 91–1677.   Argued February 22, 1993—Decided May 24, 1993

*Christopher J. Wright* argued the cause for petitioner. With him on the briefs were *Solicitor General Starr, Acting Solicitor General Bryson, Acting Assistant Attorney General Bruton, Deputy Solicitor General Wallace,* and *Steven W. Parks.*

*Raymond P. Wexler* argued the cause for respondent. With him on the brief were *Todd F. Maynes* and *Ralph P. End.**

JUSTICE BLACKMUN delivered the opinion of the Court.†

In this case, we are concerned with the legality of an employer's contributions of unencumbered property to a defined benefit pension plan. Specifically, we must address the

---

*\*Carol Connor Flowe, William G. Beyer,* and *James J. Armbruster* filed a brief for the Pension Benefit Guaranty Corporation as *amicus curiae* urging reversal.

†JUSTICE SCALIA joins all but Part III–B of this opinion.

question whether such a contribution, when applied to the employer's funding obligation, is a prohibited "sale or exchange" under 26 U. S. C. § 4975 so that the employer thereby incurs the substantial excise taxes imposed by the statute.

I

A "defined benefit pension plan," as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment. The size of that payment usually depends upon prior salary and years of service. The more common "defined contribution pension plan," in contrast, is typically one where the employer contributes a percentage of payroll or profits to individual employee accounts. Upon retirement, the employee is entitled to the funds in his account. See 29 U. S. C. §§ 1002(34) and (35).

If either type of plan qualifies for favorable tax treatment, the employer, for income tax purposes, may deduct its current contributions to the plan; the retiree, however, is not taxed until he receives payment from the plan. See 26 U. S. C. §§ 402(a)(1) and 404(a)(1).

II

The facts that are pertinent for resolving the present litigation are not in dispute. During its taxable years ended June 30, 1983, through June 30, 1988, inclusive, respondent Keystone Consolidated Industries, Inc., a Delaware corporation with principal place of business in Dallas, Tex., maintained several tax-qualified defined benefit pension plans. These were subject to the minimum funding requirements prescribed by § 302 of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, § 302, 88 Stat. 869, as amended, 29 U. S. C. § 1082. See also 26 U. S. C. § 412. Respondent funded the plans by contributions to the Keystone Consolidated Master Pension Trust.

On March 8, 1983, respondent contributed to the Pension Trust five truck terminals having a stated fair market value

of $9,655,454 at that time. Respondent credited that value against its minimum funding obligation to its defined benefit pension plans for its fiscal years 1982 and 1983. On March 13, 1984, respondent contributed to the Pension Trust certain Key West, Fla., real property having a stated fair market value of $5,336,751 at that time. Respondent credited that value against its minimum funding obligation for its fiscal year 1984. The truck terminals were not encumbered at the times of their transfers. Neither was the Key West property. Their respective stated fair market values are not challenged here.

Respondent claimed deductions on its federal income tax returns for the fair market values of the five truck terminals and the Key West property. It also reported as taxable capital gain the difference between its income tax basis in each property and that property's stated fair market value. Thus, for income tax purposes, respondent treated the disposal of each property as a "sale or exchange" of a capital asset. See 26 U. S. C. § 1222.

Section 4975 of the Internal Revenue Code, 26 U. S. C. § 4975, was added by § 2003(a) of ERISA. See 88 Stat. 971. It imposes a two-tier excise tax[1] on specified "prohibited transactions" between a pension plan and a "disqualified person." Among the "disqualified persons" listed in the statute is the employer of employees covered by the pension plan. See § 4975(e)(2)(C). Among the transactions prohibited is "any direct or indirect . . . sale or exchange . . . of any

---

[1] The first-tier tax is "5 percent of the amount involved." 26 U. S. C. § 4975(a). The second-tier tax is "100 percent of the amount involved." § 4975(b). The "amount involved" is the greater of the amount of money and the fair market value of the other property given or the amount of money and the fair market value of the other property received. § 4975(f)(4). The second-tier tax usually may be avoided by timely correction of the prohibited transaction upon completion of the litigation concerning the taxpayer's liability for the tax. See §§ 4961(a), 4963(b) and (e), 6213(a), and 7481(a).

property between a plan and a disqualified person." See §4975(c)(1)(A).

The Commissioner of Internal Revenue, who is the petitioner here, ruled that respondent's transfers to the Pension Trust of the five truck terminals and the Key West property were sales or exchanges prohibited under §4975(c)(1)(A). This ruling resulted in determined deficiencies in respondent's first-tier excise tax liability of $749,610 for its fiscal year 1984 and of $482,773 for each of its fiscal years 1983 and 1985–1988, inclusive. The Commissioner also determined that respondent incurred second-tier excise tax liability in the amount of $9,655,454 for its fiscal year 1988.

Respondent timely filed a petition for redetermination with the United States Tax Court. That court, with an unreviewed opinion on cross-motions for summary judgment, ruled in respondent's favor. 60 TCM 1423 (1990), ¶ 90,628 P–H Memo TC.

The Tax Court acknowledged that "there is a potential for abuse by allowing unencumbered property transfers to plans in satisfaction of minimum funding requirements." *Id.*, at 1424, ¶ 90,628 P–H Memo TC, p. 90–3071. Nonetheless, it did not agree that the transfers in this case constituted sales or exchanges under §4975. It rejected the Commissioner's attempt to analogize the property transfers to the recognition of income for income tax purposes, for it considered the issue whether a transfer is a prohibited transaction under §4975 to be "separate and distinct from income tax recognition." *Id.*, at 1425, ¶ 90,628 P–H Memo TC, p. 90–3071.

In drawing this distinction, the Tax Court cited 26 U. S. C. §4975(f)(3). That section specifically states that a transfer of property "by a disqualified person to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien." The court observed: "Since section 4975(f)(3) specifically describes certain transfers of real or personal property to a plan by a disqualified person as a sale or exchange for purposes of section 4975, the definitional

concerns of 'sale or exchange' are removed from the general definitions found in other areas of the tax law." 60 TCM, at 1425, ¶ 90,628 P–H Memo TC, p. 90–3071. The Tax Court thus seemed to say that § 4975(f)(3) limits the reach of § 4975(c)(1)(A), so that only transfers of *encumbered* property are prohibited.

The Tax Court also rejected the Commissioner's argument that by contributing noncash property to its plan, the employer was in a position to exert unwarranted influence over the Pension Trust's investment policy. The court's answer was that the trustee "can dispose of" the property. *Id.*, at 1425, ¶ 90,628 P–H Memo TC, p. 90–3072. The court noted that it earlier had rejected the Commissioner's distinction between transfers of property that satisfy a funding obligation and transfers of *encumbered* property, whether or not the latter transfers fulfill a funding obligation, in *Wood* v. *Commissioner*, 95 T. C. 364 (1990) (unreviewed), rev'd, 955 F. 2d 908 (CA4), cert. granted, 504 U. S. 972, dism'd, 505 U. S. 1231 (1992). See 60 TCM, at 1425, ¶ 90,628 P–H Memo TC, p. 90–3072.

The United States. Court of Appeals for the Fifth Circuit affirmed. 951 F. 2d 76 (1992). It read § 4975(f)(3) as "implying that unless it is encumbered by a mortgage or lien, a transfer of property is not to be treated as if it were a sale or exchange." *Id.*, at 78. It rejected the Commissioner's argument that § 4975(f)(3) was intended to expand the definition of "sale or exchange" to include transfers of encumbered property that do not fulfill funding obligations; in the court's view, "there is no basis for this distinction between involuntary and voluntary transfers anywhere in the Code." *Ibid.* The court reasoned: "If all transfers of property to a plan were to be treated as a sale or exchange" under § 4975(c)(1)(A), then § 4975(f)(3) "would be superfluous." *Ibid.* That a transfer of property in satisfaction of an obligation is treated as a "sale or exchange" of property for

income tax purposes is "irrelevant," because "[s]ection 4975 was not enacted to measure economic income." *Id.*, at 79.

The Court of Appeals ruled that the Commissioner's views were not entitled to deference, despite the fact that both the Internal Revenue Service and the Department of Labor administer ERISA's prohibited-transaction provisions. This was because the Commissioner's views had not been set out in a formal regulation, and because the Department of Labor's views were set out in an advisory opinion that was binding only "on the parties thereto, and has no precedential effect." *Ibid.*

In view of the acknowledged conflict between the Fourth Circuit's decision in *Wood*, see 955 F. 2d, at 913, and the Fifth Circuit's decision in the present litigation, cases decided within two weeks of each other, we granted certiorari. 506 U. S. 813 (1992).

## III

The statute with which we are concerned is a complicated one. But when much of its language, not applicable to the present case, is set to one side, the issue before us comes into better focus. Respondent acknowledges that it is a "disqualified person" with respect to the Pension Trust. It also acknowledges that the trust qualifies as a plan under § 4975. Our task, then, is only to determine whether the transfers of the terminals and of the Key West property were sales or exchanges within the reach of § 4975(c)(1)(A) and therefore were prohibited transactions.

## A

It is well established for income tax purposes that the transfer of property in satisfaction of a monetary obligation is usually a "sale or exchange" of the property. See, *e. g.*, *Helvering* v. *Hammel*, 311 U. S. 504 (1941). See also 2 B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶ 40.4, p. 40–11 (2d ed. 1990). It seems clear, therefore, that respondent's contribution of the truck termi-

nals and the Key West property constituted, under the income tax laws, sales of those properties to the Pension Trust. The Fourth Circuit, in *Wood, supra,* observed: "[W]e are aware of no instance when the term 'sale or exchange' has been used or interpreted not to include transfers of property in satisfaction of indebtedness." 955 F. 2d, at 913.

This logic applied in income tax cases is equally applicable under § 4975(c)(1)(A). The phrase "sale or exchange" had acquired a settled judicial and administrative interpretation over the course of a half century before Congress enacted in § 4975 the even broader statutory language of "any direct or indirect ... sale or exchange." Congress presumptively was aware when it enacted § 4975 that the phrase "sale or exchange" consistently had been construed to include the transfer of property in satisfaction of a monetary obligation. See *Albernaz* v. *United States,* 450 U. S. 333, 340–343 (1981). It is a "normal rule of statutory construction," *Sorenson* v. *Secretary of Treasury,* 475 U. S. 851, 860 (1986), that "identical words used in different parts of the same act are intended to have the same meaning," *Atlantic Cleaners & Dyers, Inc.* v. *United States,* 286 U. S. 427, 433 (1932). Further, "the Code must be given 'as great an internal symmetry and consistency as its words permit.'" *Commissioner* v. *Lester,* 366 U. S. 299, 304 (1961). Accordingly, when we construe § 4975(c)(1)(A), it is proper to accept the already settled meaning of the phrase "sale or exchange."

Even if this phrase had not possessed a settled meaning, it still would be clear that § 4975(c)(1)(A) prohibits the transfer of property in satisfaction of a debt. Congress barred not merely a "sale or exchange." It prohibited something more, namely, "any direct or indirect ... sale or exchange." The contribution of property in satisfaction of a funding obligation is at least both an indirect type of sale and a form of exchange, since the property is exchanged for diminution of the employer's funding obligation.

## B

We note, too, that this construction of the statute's broad language is necessary to accomplish Congress' goal. Before ERISA's enactment in 1974, the measure that governed a transaction between a pension plan and its sponsor was the customary arm's-length standard of conduct. This provided an open door for abuses such as the sponsor's sale of property to the plan at an inflated price or the sponsor's satisfaction of a funding obligation by contribution of property that was overvalued or nonliquid. Congress' response to these abuses included the enactment of ERISA's § 406(a)(1)(A), 29 U. S. C. § 1106(a)(1)(A), and the addition of § 4975 to the Internal Revenue Code.

Congress' goal was to bar categorically a transaction that was likely to injure the pension plan. S. Rep. No. 93–383, pp. 95–96 (1973). The transfer of encumbered property may jeopardize the ability of the plan to pay promised benefits. See *Wood* v. *Commissioner, supra.* Such a transfer imposes upon the trust the primary obligation to pay the encumbrance, and thus frees cash for the employer by restricting the use of cash by the trust. Overvaluation, the burden of disposing of the property, and the employer's substitution of its own judgment as to investment policy, are other obvious considerations. Although the burden of an encumbrance is unique to the contribution of encumbered property, concerns about overvaluation, disposal of property, and the need to maintain an independent investment policy animate any contribution of property that satisfies a funding obligation, regardless of whether or not the property is encumbered. This is because as long as a pension fund is giving up an account receivable in exchange for property, the fund runs the risk of giving up more than it is getting in return if the property is either less valuable or more burdensome than a cash contribution would have been.

These potential harmful effects are illustrated by the facts of the present case, even though the properties at issue

were unencumbered and not overvalued at the times of their respective transfers. There were exclusive sales-listing agreements respondent had made with respect to two of the truck terminals; these agreements called for sales commissions. The presence of this requirement demonstrates that it is neither easy nor costless to dispose of such properties. The Chicago truck terminal, for example, was not sold for 3½ years after it was listed for sale by the Pension Trust.

These problems are not solved, as the Court of Appeals suggested, by the mere imposition of excise taxes by § 4971. It is § 4975 that prevents the abuses.

## C

We do not agree with the Court of Appeals' conclusion that § 4975(f)(3) limits the meaning of "sale or exchange," as that phrase appears in § 4975(c)(1)(A). Section 4975(f)(3) states that a transfer of property "by a disqualified person to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien." The Court of Appeals read this language as implying that unless property "is encumbered by a mortgage or lien, a transfer of property is not to be treated as if it were a sale or exchange." 951 F. 2d, at 78. We feel that by this language Congress intended § 4975(f)(3) to expand, not limit, the scope of the prohibited-transaction provision. It extends the reach of "sale or exchange" in § 4975(c)(1)(A) to include contributions of encumbered property that do not satisfy funding obligations. See H. R. Conf. Rep. No. 93–1280, p. 307 (1974). Congress intended by § 4975(f)(3) to provide additional protection, not to limit the protection already provided by § 4975(c)(1)(A).[2]

---

[2] Such expanded coverage is illustrated by the following example. An employer with no outstanding funding obligations wishes to contribute property to a pension fund to reward its employees for an especially productive year of service. Under our analysis, the property contribution is permissible if the property is unencumbered, because it will not be "exchanged" for a diminution in funding obligations and therefore does not

We feel that the Commissioner's construction of § 4975 is a sensible one. A transfer of encumbered property, like the transfer of unencumbered property to satisfy an obligation, has the potential to burden a plan, while a transfer of property that is neither encumbered nor satisfies a debt presents far less potential for causing loss to the plan.[3]

## IV

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

For the reasons stated in the opinions of the Tax Court, 60 TCM 1423 (1990), ¶ 90,628 P–H Memo TC, and the Court of Appeals, 951 F. 2d 76 (CA5 1992), I am persuaded that the transfer of unencumbered property to a pension trust is not a "sale or exchange" prohibited by 26 U. S. C. § 4975(c)(1)(A) of the Internal Revenue Code. I would merely add these two observations.

---

fall within the prohibition of § 4975(c)(1)(A). On the other hand, the property contribution is impermissible if the property is encumbered, because § 4975(f)(3) specifically prohibits all contributions of encumbered property.

[3] We note, in passing, that the parties and the *amicus* have argued strenuously the issue whether we should afford deference to the interpretation of the statute by the two agencies charged with administering it. See Brief for Petitioner 29–32; Brief for Respondent 39–42; Reply Brief for Petitioner 18–20; Brief for Pension Benefit Guaranty Corporation as *Amicus Curiae* 10–13.

It does appear that the Department of Labor and the Internal Revenue Service consistently have taken the position that a sponsoring employer's transfer of unencumbered property to a pension plan to satisfy its funding obligation is a prohibited sale or exchange. See Department of Labor Advisory Opinion 81–69A, issued July 28, 1981; Department of Labor Advisory Opinion 90–05A, issued March 29, 1990; Rev. Rule 81–40, 1981–1 Cum. Bull. 508; Rev. Rule 77–379, 1977–2 Cum. Bull. 387.

We reach our result in this case without reliance on any rule of deference. Because of the nature and limitations of these rulings, we express no view as to whether they are or are not entitled to deference. The resolution of that issue is deferred to another day.

In holding that an employer's transfer of unencumbered property to a pension fund in satisfaction of a funding obligation is a "sale or exchange" barred by § 4975(c)(1)(A), the Court draws upon the well-established rule that *for income tax purposes* the transfer of property to satisfy an indebtedness is a "sale or exchange." *Ante,* at 158. It is equally well established, however, or at least was so at the time Congress enacted § 4975(c)(1)(A), that *any* contribution of property by an employer to an employee pension fund, whether done so voluntarily or pursuant to a funding obligation, is, for income tax purposes, a "sale or exchange" of that property. See *Tasty Baking Co.* v. *United States,* 393 F. 2d 992 (Ct. Cl. 1968); *A. P. Smith Manufacturing Co.* v. *United States,* 364 F. 2d 831 (Ct. Cl. 1966); *United States* v. *General Shoe Corp.,* 282 F. 2d 9 (CA6 1960); see also Rev. Rul. 75–498, 1975–2 Cum. Bull. 29. If indeed our focus in answering the question presented in this case is to be congressional understanding of the term "sale or exchange" as it relates to the determination of gain or loss, it would seem to follow that Congress, in enacting § 4975(c)(1)(A), rejected the very distinction between voluntary and mandatory contributions that the Commissioner advocates and that the Court today embraces. The alternative, of course, is to recognize, as did the Tax Court and the Court of Appeals, that Congress did not intend to import into § 4975(c)(1)(A) the meaning of "sale or exchange" that has developed and been applied in the very different context of measuring a taxpayer's gain or loss upon the disposition of property. See 951 F. 2d, at 79; 60 TCM, at 1425, ¶ 90,628 P–H Memo TC, p. 90–3071. I would so hold.*

---

*In defense of his position, the Commissioner argues that there is no inconsistency in relying on the well-established meaning of "sale or exchange," and holding that a voluntary contribution to a pension plan is not barred by § 4975(c)(1)(A). The latter, the Commissioner argues, bars the "sale or exchange" of property "between a plan" and an employer, whereas the relevant provisions of the Internal Revenue Code refer more generally to the "sale or exchange" of property. See, *e. g.,* 26 U. S. C. §§ 1001(c), 1222. By this reasoning, a voluntary transfer of property to a pension plan is a "sale or exchange" for purposes of determining gain or loss, but

The Court is properly concerned about the potential for abuse associated with an employer's transfer of property to a pension plan. See *ante*, at 160. It is worth noting, however, that the risk of abuse is mitigated by the fact that the trustees of a pension plan have the right—indeed, the duty— to refuse to accept property transfers that are disadvantageous to the trust. See generally 29 U. S. C. § 1104. Indeed, there may well be situations in which a rule that disables the trustees from accepting any consideration other than cash may be contrary to the best interests of the trust. For example, one can easily imagine a situation in which the trustees, acting prudently and in the best interests of the plan beneficiaries, would prefer that an employer transfer an undervalued piece of property to the plan, as opposed to selling the property to a third party at a discount and satisfying its funding obligation in cash. Though the majority's reading of the statute is plausible, I am not persuaded that Congress intended to so restrict employers and pension plan trustees.

I respectfully dissent.

---

is not a "sale or exchange" between the employer and the plan within the meaning of § 4975(c)(1)(A) because it was not made in satisfaction of a mandatory funding obligation.

The Commissioner's argument, in my view, places more weight on the words "between a plan" in § 4975(c)(1)(A) than they can reasonably bear. The Commissioner asks that we accept the hypothesis that Congress drew upon a settled body of law regarding the terms "sale or exchange" in the income tax context, but then, by the use of these three words, departed from that settled usage and drew a distinction between voluntary and involuntary contributions that had been roundly rejected in the case law and by the Internal Revenue Service itself. Again, as did the Court of Appeals and the Tax Court, I find it more likely that Congress intended that we construe § 4975(c)(1)(A) in its context, and independent of the meaning attributed to the term "sale or exchange" in other parts of the Internal Revenue Code.