WESTOAK REALTY AND IN-
VESTMENT COMPANY,
INC., Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 92–2849.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1993.

Decided July 9, 1993.

Rehearing Denied Aug. 5, 1993.

James J. Sauter, St. Louis, MO, argued,
for appellant.

Kevin M. Brown, Washington, DC, argued
(James A. Bruton, Gary R. Allen and Ken-
neth L. Greene, on brief), for appellee.

Before McMILLIAN and BEAM, Circuit
Judges, and SACHS,* Senior District Judge.

SACHS, Senior District Judge.

Westoak Realty and Investment Company,
Inc. ("Westoak") appeals the decision of the
United States Tax Court concerning an ex-
cise tax imposed for participating in prohibit-
ed transactions under 26 U.S.C. § 4975, a
provision of the Employee Retirement In-
come Security Act of 1974 ("ERISA"). The
Tax Court[1] determined that the petitioner
was responsible for a deficiency in excise tax
imposed under § 4975 in the amount of $36,-
581.75 for the years 1979 to 1983. We af-
firm.

## I.

Westoak was a Missouri licensed mortgage
lending institution and wholly owned subsid-
iary of Custom Builders Corporation ("Cus-
tom Builders"). William McGinnis owned all
the stock of Custom Builders and was presi-
dent of both Westoak and Custom Builders.
Custom Builders sponsored a profit sharing
plan with an accompanying trust entitled the
Custom Builders Corporation Profit Sharing
Plan (the "profit sharing plan"). At its in-
ception, McGinnis was the sole trustee of the
profit sharing plan.

Westoak made construction loans to indi-
viduals who purchased Custom Builders'
built homes. The loans were secured by
notes payable to Westoak with first deeds of
trust to Westoak. In 1979 and 1980, in an
effort to generate cash, Westoak sold a series
of short term construction notes to the profit
sharing plan at discounts of 10 to 20 percent.
McGinnis decided to sell the notes and deter-
mined what price the profit sharing plan
would pay. Six of the eight notes were paid
off by November 4, 1980, while the remaining
two notes were paid off on October 7, 1982.
The notes performed well for the profit shar-

---

* The Honorable Howard F. Sachs, Senior United
States District Judge for the Western District of
Missouri, sitting by designation.

1. The Hon. John O. Colvin, Judge, United States
Tax Court.

ing plan, yielding $39,627.09 in interest and $39,893.20 in discounts.

On November 5, 1980, some nine months after Westoak sold the final notes to the profit sharing plan, Custom Builders adopted an amendment to and restatement of the profit sharing plan, naming Tower Grove Bank and Trust Company ("Tower Grove") as a co-trustee. The amendment stated that the effective date of Tower Grove's co-trusteeship was August 1, 1978. The amendment specifically limited Tower Grove's duties to, "approving only investments of the profit sharing plans upon a grant of exemption which is obtained from the U.S. Department of Labor, to the extent and under conditions described in any such exemption granted to the trust by the Department of Labor." After about fifteen months, on January 25, 1982, Tower Grove resigned as co-trustee of the profit sharing plan, explaining that it was contrary to its policy to act as a co-trustee of a profit sharing trust unless the bank controlled the investment of trust assets.

On March 20, 1989, the Commissioner of Internal Revenue sent Westoak a notice of deficiency in which he asserted deficiencies in excise taxes under § 4975(a) of the Code for taxable years 1979–1983. Subsequently the taxpayer filed a petition with the Tax Court seeking a redetermination of the deficiencies asserted. Following a February 5, 1991, trial, the Tax Court sustained the Commissioner's deficiency determinations in an opinion and order dated March 24, 1992.

On appeal, Westoak makes three arguments. First, Westoak asserts that the third party trustee agreement with Tower Grove retroactively cured all prohibited transactions resulting from McGinnis' status as sole trustee. Second, Westoak contends the transactions fall within the exemptions contemplated in §§ 4975(c)(2) and 4975(d), and described in Prohibited Transactions Class Exemptions 81–8, 46 Fed.Reg. 7511 (1981), and 88–59, 53 Fed.Reg. 24811 (1988). Third, Westoak argues that in the alternative, the

excise tax should not apply for the taxable fiscal years following Tower Grove's appointment as co-trustee of the profit sharing plan.

We review decisions of the United States Tax Court on the same basis as decisions in civil bench trials in United States District Courts. 26 U.S.C. § 7482. Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable de novo. *Sargent v. Commissioner*, 929 F.2d 1252, 1255 (8th Cir.1991). The parties have stipulated to the facts of this case, and the issues on appeal are legal issues. Therefore, we will review the Tax Court decision de novo.

## II.

Westoak concedes that at the time of the transaction, it was a "disqualified person" involved in a "prohibited transaction" under the statute. McGinnis was sole shareholder, owner and trustee of Westoak. He exercised sole discretionary authority over management and administration of the profit sharing plan and disposition of its assets, and therefore was a fiduciary pursuant to § 4975(e)(3). The parties stipulated to the fact that McGinnis sold the notes to the profit sharing plan to generate cash for Westoak.[2] Consequently, McGinnis was a disqualified person under § 4975(e)(2), who engaged in prohibited transactions under § 4975(c)(1)(E).[3] Because McGinnis wholly owned Custom Builders, which wholly owned Westoak, and Westoak was the participant in the transactions, Westoak was a "disqualified person" involved in a "prohibited transaction" under § 4975(c)(1)(E).

However, Westoak contends that the Tax Court erred in holding that Westoak could not retroactively cure the prohibited transaction to avoid the first tier tax under § 4975(a). Westoak argues that the amended profit sharing plan document signed by

---

2. During the late 1970's a recession in the residential housing industry occurred during a period when interest rates were rising dramatically. Apparently, this directly or indirectly caused cash flow problems for Westoak, which needed money from the sale of the notes to pay bills.

3. Section 4975(c)(1)(E) prohibits transactions, "by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account."

Tower Grove Bank on November 5, 1980, retroactively cured the transaction because Tower Grove's "presence and examination approved and corrected these transactions from any taint they may have had."[4] Appellant's Brief at 15. Westoak's theory is that had Tower Grove been co-trustee when the transactions occurred, Westoak would not have been a disqualified person, and the Commissioner would not have assessed an excise tax. Therefore, the November 5, 1980, agreement, which retroactively made Tower Grove co-trustee, allegedly cured the transaction.

Whether Tower Grove's initial appointment as co-trustee would have validated the transactions is doubtful;[5] however, the court need not decide that question because we find that the tax code does not permit retroactive actions to cure, and consequently avoid, the § 4975(a) first tier tax. The legislative history of ERISA as well as the structure of § 4975 reflect Congress' intent that the prohibited transactions under § 4975 are per se violations, and not curable retroactively.

ERISA is a comprehensive remedial scheme designed to protect the pension and benefits of employees. As part of Title II of ERISA, which the Internal Revenue Service administers, Congress enacted § 4975, prohibiting persons with a close relationship to a plan from using that relationship to the detriment of plan beneficiaries. *Wood v. Commissioner*, 955 F.2d 908, 910 (4th Cir.1992), *cert. dismissed*, —— U.S. ——, 112 S.Ct. 3061, 120 L.Ed.2d 930 (1992). Prior to Congress' enactment of § 4975, prohibited transactions rules relied on an "arm's-length" standard of conduct. However, because this standard required substantial enforcement resulting in questionable effectiveness, Con-

gress replaced the "arm's-length" standard with a per se rule to "substantially strengthen" the laws governing prohibited transactions. S.Rep. No. 383, 93d Cong., 1st Sess. 32 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4917; *see also Wood*, 955 F.2d at 911–912. Congress' goal was to bar categorically a transaction that was likely to injure the pension plan. *Commissioner v. Keystone Consolidated Industries, Inc.*, —— U.S. ——, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993). This purpose of maintaining the integrity of pension plans is reflected in the Senate Finance Committee Report on ERISA, S.Rep. No. 383, *reprinted in* 1974 U.S.C.C.A.N. at 4916:

> [u]nfortunately, instances have arisen in which pension funds have been used improperly by plan managers and fiduciaries. The committee believes that this situation should not be permitted to continue and has adopted measures designed to reduce substantially the potentialities for abuse in this regard.

The Committee noted that the new rules (§ 4975) would make enforcement more practical and better ensure the integrity of benefit plans.

The structure of § 4975 reflects Congress' purpose not just to tax abusive transactions, but to eliminate the "potentialities for abuse." Section 4975 imposes two levels of excise tax on "any disqualified person who participates in [a] prohibited transaction." The first level imposes a tax on the disqualified person equal to five percent of the amount involved in the prohibited transaction. The second level imposes an additional tax on the prohibited transaction equal to 100% of the amount involved if the transaction is not timely corrected. Because restor-

---

4. Westoak asserts that:
   [t]here is no question that had Tower Grove bank been appointed as Co–Trustee to examine investment transactions like these in the original document of the plan dated August 1, 1978, Respondent would not have a leg to stand on. The retroactive appointment of Tower Grove bank results in the same consequences.
   Appellant's Brief at 16.

5. Even if Tower Grove Bank had been a co-trustee, McGinnis would still have been a fiduciary, Westoak would still have been a disqualified

person, and it appears the transaction would still have been prohibited. Moreover, no evidence exists that Tower Grove Bank approved or even reviewed the transactions. The agreement signed in 1980 limited Tower Groves' duties to approving investments exempted by the Department of Labor. As discussed below, these transactions were not upon a grant of exemption from the Labor Department, and therefore, they were not the type of transactions Tower Grove would review pursuant to the November 5, 1980, agreement with Westoak.

ing the amount involved to the trust would be less expensive than paying the 100% tax, Congress expected that the trusts would ultimately benefit from the sanctions under § 4975. S.Rep. No. 383, *reprinted in* 1974 U.S.C.C.A.N. at 4917.

Under Westoak's theory taxpayers could retroactively correct transactions to avoid the first tier tax as well as the second tier tax. As the Tax Court correctly explained, Westoak's theory is at odds with the structure of the statute and the purposes of ERISA. If the statute allowed taxpayers to avoid a first tier tax simply by retroactively curing the transaction, no incentive would exist to avoid the transaction in the first instance. The taxpayer would face a no lose situation: either conduct the transaction without detection, or cure the transaction retroactively without penalty. This choice would hardly reduce the potentialities for abuse to ensure the integrity of pensions and benefits of employees.

At oral argument, Westoak emphasized its good faith in conducting the transactions and the good yield to the profit sharing plan. Westoak's good faith and the good return to the profit sharing plan are irrelevant to § 4975(a). The sin under ERISA and specifically § 4975, is not just causing financial loss to the plan; it encompasses the prohibited transaction regardless of gain or loss. *Lowen v. Tower Asset Management, Inc.*, 829

F.2d 1209, 1213 (2nd Cir.1987); *Donovan v. Cunningham*, 716 F.2d 1455, 1464–1465 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984);[6] *Leib v. Commissioner*, 88 T.C. 1474, 1480–1481, 1987 WL 31360 (1987). To find otherwise would defeat the purpose of the per se rule. While a good return to the plan may avoid assessment of the second tier tax, it provides no relief from the first tier tax. The statute simply does not allow for retroactive correction to avoid the first tier tax.[7]

### III.

Westoak next argues that the transactions qualified for a special exemption under Class Exemptions 81–8 and 88–59. Under § 4975(c)(2), the Secretary of Labor may grant a Special Exemption for otherwise prohibited transactions which meet certain criteria under the statute. However, § 4975(c)(2) specifically restricts exemptions for § 4975(c)(1)(E) transactions.[8] Moreover, the General Information sections of each exemption state that the exemptions do not extend to § 4975(c)(1)(E) transactions. *See* 46 Fed. Reg. 7511, 7517; 47 Fed.Reg. 21331, 21338; 53 Fed.Reg. 24811, 24814. As stated above, the transactions Westoak participated in were § 4975(c)(1)(E) transactions; accordingly, the Class Exemptions provide no relief for Westoak.[9]

---

**6.** Both *Lowen* and *Donovan* interpret 29 U.S.C. § 1106 (1976) which is a parallel prohibited transaction provision in Title I of ERISA, and thus these cases are instructive in interpreting § 4975. *Wood*, 955 F.2d at 912.

**7.** Westoak cites Revenue Ruling 82–66, 1982–1, C.B. 61 ¶ 19,616 to support its theory. Revenue Ruling 82–66 provides that an employer may make retroactive amendments to cure defects in a qualifying plan pursuant to § 401(b) of the Internal Revenue Code, as long as the changes do not affect the level of employee benefit rights. The revenue ruling has no relevance to retroactively curing prohibited transactions under § 4975.

Westoak also states that the Tax Court's opinion "flies in the face of Internal Revenue Code § 4975(f)(5)," which defines "correct" and "correction" for purposes of § 4975. This argument is meritless. Section 4975(f)(5) has no relevance to the first tier tax imposed under § 4975(a); § 4975(a) does not even mention the words "correct" or "correction."

**8.** Section 4975(c)(2) provides that,

No exemption may be granted under this paragraph with respect to a transaction described in Subparagraph (E) or (F) of paragraph (1) unless the Secretary affords an opportunity for a hearing and makes a determination on the record with respect to the findings required under Subparagraphs (A), (B), and (C) of this paragraph, except that in lieu of such hearing the Secretary may accept any record made by the Secretary of Labor with respect to an application for exemption under Section 408(a) of Title I of [ERISA].

Nothing in the record indicates, and Westoak does not allege, that the Secretary afforded an opportunity for a hearing or adopted any record made by the Secretary of Labor concerning an application for exemption under § 408(a) of Title I of ERISA.

**9.** Westoak also makes a passing reference to § 4975(d) to support its exemption argument, but never elaborates on which exemption ap-

## IV.

Finally, Westoak argues that the excise tax should not apply for the taxable fiscal years ending July 31, 1981, July 31, 1982, and July 31, 1983. Westoak contends that Tower Grove was co-trustee in November 1980 and approved the transactions. However, the Government continued to assess excise tax on the transactions until all notes were fully paid on October 7, 1982. Westoak's inference is that as of November 1980, the co-trustee agreement with Tower Grove corrected the transactions and therefore, the Government should not have imposed excise taxes for the following years. This argument fails for the same reason Westoak's retroactivity argument fails. Section 4975(a) does not permit any form of correction to avoid the first tier excise tax. All the transactions took place prior to February 1980. Even if such a cure were possible, there is an absence of proof of review and approval of loans by Tower Grove as co-trustee. The co-trustee agreement in 1982 provides no relief for Westoak from the excise tax imposed under § 4975(a).

The decision of the Tax Court is affirmed.

plies. Upon review, it appears Westoak's transactions with the profit sharing plan do not qualify for any of the enumerated exemptions in § 4975(d).