# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1310
_____

Terry L. Ellis; Sheila K. Ellis

*Petitioners - Appellants*

v.

Commissioner of Internal Revenue

*Respondent - Appellee*

_____

Appeal from the United States Tax Court

_____

Submitted: April 14, 2015
Filed: June 5, 2015

_____

Before WOLLMAN and GRUENDER, Circuit Judges, and DOTY,[1] District Judge.

_____

DOTY, District Judge

Terry and Sheila Ellis appeal from the decision of the tax court[2] finding a deficiency in their 2005 income tax and imposing related penalties. Because we

_____

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Elizabeth C. Paris, United States Tax Court Judge.

conclude that Mr. Ellis engaged in a prohibited transaction with respect to his individual retirement account (IRA), we affirm.

## I.

On May 25, 2005, an attorney for Mr. Ellis formed CST Investments, LLC (CST), to engage in the business of used automobile sales in Harrisonville, Missouri. The operating agreement for CST listed two members: (1) a self-directed IRA belonging to Mr. Ellis, and (2) Richard Brown, an unrelated person who worked full-time for CST. The operating agreement contemplated that Mr. Ellis's IRA would provide an initial capital contribution of $319,500 in exchange for a 98 percent ownership in CST, and that Brown would purchase the remaining 2 percent interest for $20. Mr. Ellis was designated as the general manager for CST and given "full authority to act on behalf of" the company. The operating agreement also stated that "the General Manager shall be entitled to such Guaranteed Payment as is Approved by the Members."

Mr. Ellis's IRA did not exist at the time CST was formed. Rather, he established the IRA with First Trust Company of Onaga (First Trust) in June 2005. On June 22, 2005, he received $254,206.44 from a 401(k) that he had established with his previous employer, and he deposited the amount in his IRA. He then directed First Trust as the custodian of the IRA to acquire 779,141 shares of CST at a cost of $254,000. On August 19, 2005, Mr. Ellis received an additional $67,138.81 from his 401(k), which he again deposited into the IRA. He directed First Trust to acquire an additional 200,859 shares of CST at a cost of $65,500. Mr. Ellis reported the transfers from his 401(k) to the IRA as non-taxable rollover contributions. By the end of 2005, the IRA had a fair market value of $321,253, consisting of its membership interest in CST and $1,773 in cash.

To compensate him for his services as general manager, CST paid Mr. Ellis a salary of $9,754 in 2005 and $29,263 in 2006. The wages were drawn from CST's corporate checking account and were reported as income on the Ellises' joint tax returns for both years. It is unclear whether CST paid the salary pursuant to the guaranteed payment provision in its operating agreement or under Mr. Ellis's authority as general manager. Under either scenario, however, Mr. Ellis had the ability to effectively direct the payments to himself.

On March 28, 2011, the Commissioner of the Internal Revenue Service sent the Ellises a notice of deficiency, identifying a $135,936 income-tax deficiency for 2005 or, in the alternative, a $133,067 deficiency for 2006. The notice also imposed a $27,187 accuracy-related penalty for 2005 or, in the alternative, a $26,613 accuracy-related penalty and $19,731 late-filing penalty for 2006. The Commissioner determined, in relevant part, that Mr. Ellis engaged in prohibited transactions under 26 U.S.C. § 4975(c) by (1) directing his IRA to acquire a membership interest in CST with the expectation that the company would employ him, and (2) receiving wages from CST. The notice explained that, as a result of these transactions, the IRA lost its status as an individual retirement account and its entire fair market value was treated as taxable income. See 26 U.S.C. § 408(e)(2).

The Ellises filed a timely petition in tax court to contest the notice of deficiency. The parties jointly stipulated to all material facts and moved for a decision under Tax Court Rule 122. On October 30, 2005, the tax court upheld the Commissioner's determination that Mr. Ellis engaged in a prohibited transaction by causing CST to pay him wages in 2005.[3] The tax court determined that Mr. Ellis "formulated a plan in which he would use his retirement savings as startup capital for a used car business" and use the business as his primary source of income. Because

_____

[3] The tax court found no deficiency in income tax for 2006 and did not impose any penalties for that year. The Commissioner does not appeal this determination.

Mr. Ellis could direct his compensation from CST, the tax court found that he engaged in the transfer of plan income or assets for his own benefit in violation of § 4975(c)(1)(D) and dealt with the income or assets of his IRA for his own interest or account in violation of § 4975(c)(1)(E).[4]  The Ellises now appeal.

## II.

The Ellises argue that the tax court erred in upholding the Commissioner's determination that Mr. Ellis engaged in a prohibited transaction by causing CST to pay him wages in 2005.[5]  We review the tax court's legal conclusions and application of law to the facts de novo.  Blodgett v. Comm'r, 394 F.3d 1030, 1035 (8th Cir. 2005); Musco Sports Lighting v. Comm'r, 943 F.2d 906, 907 (8th Cir. 1991).

Section 4975 limits the allowable transactions for certain retirement plans, including individual retirement accounts under § 408(a).  It does so by imposing an excise tax on enumerated "prohibited transactions" between a plan and a "disqualified person."  26 U.S.C. § 4975(a).  Prohibited transactions include any "direct or indirect . . . transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;" or "act by a disqualified person who is a fiduciary whereby he deals

---

[4] The tax court also found that the IRA's purchase of an interest in CST was not a prohibited transaction because the company did not have any membership interests when the investment was made.  See Swanson v. Comm'r, 106 T.C. 76, 88 (1996) (explaining that a "corporation without shares or shareholders does not fit within the definition of a disqualified person").  It declined to address the Commissioner's argument that the investment was prohibited because  it was made as part of an arrangement through which Mr. Ellis would derive a personal benefit in the form of wages.  Because we determine that the payment of wages was prohibited under § 4975(c), we need not consider whether the investment was prohibited as well.

[5] The Ellises do not dispute that, if a prohibited transaction did occur in 2005, they are liable for the associated accuracy-related penalty and 10 percent tax for an early distribution from a qualified retirement plan.  See 26 U.S.C. §§ 72(t), 6662.

with the income or assets of a plan in his own interest or for his own account." Id. § 4975(c)(1)(D), (E). Such transactions are prohibited even if they are made in good faith or are beneficial to the plan. See Westoak Realty & Inv. Co., Inc. v. Comm'r, 999 F.2d 308, 311 (8th Cir. 1993); Leib v. Comm'r, 88 T.C. 1474, 1481 (1981).

If a disqualified person engages in a prohibited transaction with an IRA, the plan loses its status as an individual retirement account under § 408(a), and its fair market value as of the first day of the taxable year is deemed distributed and included in the disqualified person's gross income. 26 U.S.C. § 408(e)(2). It is undisputed that Mr. Ellis was a disqualified person under § 4975(e)(2)(A) because he was a fiduciary of his IRA. See id. § 4975(e)(3) (defining a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan or . . . management or disposition of its assets"). The parties also agree that CST was a disqualified person because Mr. Ellis was a beneficial owner of the IRA's membership in the company. See id. § 4975(e)(2)(G)(i) (including as a disqualified person a corporation in which 50 percent or more of "the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation" is owned by a fiduciary); id. § 4975(e)(4) (stating that ownership includes indirect ownership). Therefore, the only issue on appeal is whether the payment of wages in 2005 was a prohibited transaction.

The tax court properly found that Mr. Ellis engaged in a prohibited transaction by directing CST to pay him a salary in 2005. The record establishes that Mr. Ellis caused his IRA to invest a substantial majority of its value in CST with the understanding that he would receive compensation for his services as general manager. By directing CST to pay him wages from funds that the company received almost exclusively from his IRA, Mr. Ellis engaged in the indirect transfer of the income and assets of the IRA for his own benefit and indirectly dealt with such income and assets for his own interest or his own account. See 26 U.S.C.

§ 4975(c)(1)(D), (E); 29 C.F.R. § 2509.75-2(c) ("[I]f a transaction between a party in interest[6] and a plan would be a prohibited transaction, then such a transaction between a party in interest and such corporation . . . will ordinarily be a prohibited transaction if the plan may, by itself, require the corporation . . . to engage in such transaction."); Dep't of Labor Op. No. 2006-01A, 2006 WL 149107, at *2 (Jan. 6, 2006) (finding that a particular lease agreement between a disqualified person and a corporation in which an IRA invested was a prohibited transaction).

The Ellises rely on the Plan Asset Regulation, 29 C.F.R. § 2510.3-101, to argue that a prohibited transaction did not occur because Mr. Ellis's salary was drawn from CST's corporate account and not from the income or assets of the IRA. See 29 C.F.R. § 2510.3-101(c) (providing that the underlying assets of an "operating company"[7] in which a plan invests are not considered plan assets for determining whether a prohibited transaction occurred). The plain language of § 4975(c), however, prohibits both "direct and indirect" self-dealing of the income or assets of a plan. See Comm'r v. Keystone Consol. Indus., Inc., 508 U.S. 152, 159 (1993) (reading "indirect" broadly); Peek v. Comm'r, 140 T.C. 216, 225 (2013) (finding taxpayers' personal guaranties on a promissory note issued by a corporation that was owned by their IRAs were prohibited under § 4975(c) as indirect extensions of credit to the IRAs). The

---

[6] The Department of Labor has interpretive authority over § 4975 and 29 U.S.C. § 1106, a parallel ERISA provision pertaining to prohibited transactions between a plan and a "party in interest." See Dep't of Labor Op. No. 2006-01A, 2006 WL 149107, at *1 n.1 (Jan. 6, 2006). The terms "party in interest" and "disqualified person" are analogous for purposes of this appeal. See Rutland v. Comm'r, 89 T.C. 1137, 1143 n.5 (1987). Interpretations of § 1106 are instructive in determining whether a prohibited transaction has occurred under § 4975. See Leib, 88 T.C. at 1480-81.

[7] An operating company is "an entity that is primarily engaged . . . in the production or sale of a product or service other than the investment of capital." 29 C.F.R. § 2510.3-101(c). The parties agree that CST is an operating company.

Plan Asset Regulation cannot be read to nullify this general rule against indirect self-dealing. See 29 C.F.R. § 2509.75-2 (stating that the fiduciary responsibility rules regarding prohibited transactions are outside the scope of the Plan Asset Regulation); Dep't of Labor Op. No. 2006-01A, 2006 WL 149107, at *2 n.3 (Jan. 6, 2006) (explaining that certain transactions between a disqualified person and a corporation in which a plan invests are prohibited regardless of whether they meet the plan asset regulation).

The Ellises also argue that the payment of wages, under the circumstances presented here, is exempt under § 4975(d)(10). That provision excludes from the list of prohibited transactions the "receipt by a disqualified person of any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan." As noted by the tax court, however, this exemption applies only to compensation for services rendered in the performance of plan duties. See Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1216 n.4 (2d Cir. 1987). CST compensated Mr. Ellis for his services as general manager of the company, not for any services related to his IRA. Section 4975(d)(10) is therefore inapplicable to this dispute.

Accordingly, we affirm the decision of the tax court.

_____