**Robert B. REICH, United States Secretary of the Department of Labor**

v.

**Walter W. KING, et al.**

**Civ. A. No. WN–92–2116.**

United States District Court, D. Maryland.

Aug. 17, 1994.

Lawrence Brewster, U.S. Dept. of Labor, Office of the Sol., Plan Ben. Sec. Div., Washington, DC, and Jeanette Plante, Asst. U.S. Atty., D. Md., Baltimore, MD, for plaintiff.

James A. Rothschild, and Anderson, Coe & King, Baltimore, MD, for defendants.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court are the Secretary of Labor's and Defendants' Cross–Motions for Summary Judgment (Paper No. 39, The Secretary's Motion for Partial Summary Judgment, and Paper No. 40, Defendants' Motion for Summary Judgment), and Defendants' Request for an Advisory Jury (Paper No. 34). All motions are opposed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6), and all motions will be denied.

## I. BACKGROUND

The Secretary of Labor has brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (5), as amended,[1] against Walter W. King Plumbing & Heating Contractor, Inc. ("King Plumbing"); the King Plumbing Money Purchase Plan, the King Plumbing Profit Sharing Plan, and the King Plumbing Benefit Trust (collectively "the Plan"); and Walter W. and Evelyn R. King as trustees of the plans (collectively, "the Kings"). The complaint alleges that the Kings invested a disproportionate percentage of plan assets in residential mortgages, and that the loans were made to the Kings' customers, who then allegedly used the proceeds to buy land and services from the Kings. The Secretary claims that these activities are in violation of ERISA in that they constitute self-dealing, failure to diversify, and violation of the fiduciary obligation. Defendants answered the complaint and filed two counterclaims. On motion of the Secretary, this Court dismissed those counterclaims in March 1993. On February 14, 1994, the Court approved a consent decree dismissing the claims relating to prohibited transactions in violation of 29 U.S.C. §§ 1104(a)(1)(A), 1106(a)(1)(D) and 1106(b)(1). The only remaining claims allege breach of fiduciary duty under 29 U.S.C. § 1104(a)(1)(B), (C) and (D). The Secretary seeks an order requiring Defendants to restore all losses to the Plan, appointing an independent fiduciary for the purpose of divesting the real estate loans, and enjoining Defendants from further violating ERISA.

The essential facts of this case are as follows. In 1976, King Plumbing established a profit-sharing plan and pension plan for its employees, known as the Profit Sharing Plan and Money Purchase Plan. Walter and Evelyn King were trustees of the Plan, and King Plumbing was the Plan's sponsor. In 1990, the Profit Sharing Plan and the Money Purchase Plan were merged into one Plan, the Benefit Trust. In the early 1980's, Walter King, who has substantial knowledge and experience in the real estate market in western Maryland, began investing the Plan's assets in residential real estate mortgages in western Maryland. The number of assets invested in mortgages increased gradually, peaking in 1990 at 77%. Defendant Walter King testified that the Plan may now have 70% or more of its assets invested in mortgages. Deposition of Walter W. King at 147. That estimate is confirmed by the 1993 annual report for King Plumbing, which shows that 75% of the company's assets are invested in mortgages and mortgage notes. All of

[1]. 29 U.S.C. § 1132 provides that the Secretary may bring a civil action seeking equitable relief for alleged breach of fiduciary duty. All citations to ERISA will be made to the corresponding provision in Title 29 of the United States Code.

the mortgages are secured by residential real estate located in four neighboring counties in western Maryland—Frederick, Montgomery, Washington and Carroll Counties. Seventy-two per cent of the mortgages, which equals 70% of all the Plan's investments, are secured by property located in Frederick County.

In 1990, the Department of Labor targeted the King Plan as having more than 53% of its assets invested in real estate mortgages in 1987. The Department of Labor then opened an investigation of the Plan in October 1990. As a result of the investigation, the Secretary brought this civil action in July 1992. The Secretary now seeks partial summary judgment against the Kings for failure to diversify the assets of the Plan (29 U.S.C. § 1104(a)(1)(C)) and against King Plumbing for failing to monitor the performance of the trustees to ensure compliance with ERISA in accordance with plan documents and instruments (29 U.S.C. §§ 1104(a)(1)(D) and 1105(a)(2) and (3)). Defendants opposed the Secretary's motion and filed a cross-motion for summary judgment on all remaining claims. Trial is scheduled to commence on September 26, 1994.

## II. SUMMARY JUDGMENT STANDARD

 Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 permits the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323,

106 S.Ct. at 2552. (citations omitted). On the other hand, if there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). In assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). With these principles in mind, the Court will address the arguments presented by the parties.

## III. DISCUSSION

29 U.S.C. § 1104(a)(1)(A)–(D) provides as follows:

(a)(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA].

If a trustee or other plan fiduciary breaches any of his fiduciary obligations under § 1104, he may be sued by the Secretary and subject to personal liability for losses to the plan and to all other appropriate equitable relief, including injunctive relief. *See* 29 U.S.C.

§§ 1109, 1132(a)(2) and (5); *Marshall v. Glass/Metal Ass'n & Glaziers & Glassworkers Pension Plan,* 507 F.Supp. 378, 383 (D.Haw.1980).

◼ The 1974 Conference Report on ERISA explains that the reason for the diversification requirement of § 1104(a)(1)(C) is to eliminate the risk of large losses.

> Ordinarily the fiduciary should not invest the whole or an unduly large proportion of the trust property in one type of security or in various types of securities dependent upon the success of one enterprise or upon conditions in one locality, since the effect is to increase the risk of large losses.

H.R.Rep. No. 1280, 93d Cong., 2d Sess. 304, *reprinted in* 1974 U.S.Code Cong. & Admin.News, 5038, 5085 ("Conference Report"). *Id.* at 5085.[2] Congress did not choose to establish a specific percentage requirement for investment concentration. *Lanka v. O'Higgins,* 810 F.Supp. 379, 386 (N.D.N.Y. 1992). The Conference Report explains that "[t]he degree of investment concentration that would violate this requirement to diversify cannot be stated as a fixed percentage, because a prudent fiduciary must consider the facts and circumstances of each case." Conference Report at 5084. Thus, the appropriate level of diversification in this case must be considered in light of the facts and circumstances particular to it. *Lanka,* 810 F.Supp. at 386. In the case of mortgage investments, the Conference Report does not advise that a fiduciary should not concentrate in mortgages, but rather if he chooses to invest in mortgages, they should be secured by a diverse array of real estate.

> If [the fiduciary] is investing in mortgages on real property he should not invest a

disproportionate amount of the trust in mortgages in a particular district or on a particular class of property so that a decline in property values in that district or of that class might cause a large loss.

Conference Report at 5085. *Accord* Restatement (Second) of Trusts § 228, cmt. e (1959) (using similar language with respect to a fiduciary's duty to diversify mortgage investments).

◼ In cases brought by the Secretary under § 1104(a)(1)(C), the initial burden is on the Secretary to show a violation of the diversification requirement. If the Secretary is successful in meeting that burden, then Defendants must demonstrate that their actions were "clearly prudent." *See* Conference Report at 5084; *Lanka,* 810 F.Supp. at 386–87. In this case, Defendants acknowledge that by concentrating upwards of 70% of the Plan's assets in real estate mortgages, they have not diversified plan assets in satisfaction of the requirements of § 1104. Thus, Defendants bear the "heavy burden" of showing that their decision not to diversify was clearly prudent. *Glass/Metal Ass'n.,* 507 F.Supp. at 384. Defendants' task is "not merely to prove that the investment is prudent, but that there is no risk of large loss resulting from the non-diversification." *Id.*

Some confusion has arisen between the parties regarding the distinction between § 1104(a)(1)(B) and § 1104(a)(1)(C). The same "prudent man" standards apply in both subparagraph (B) and (C). *Lanka,* 810 F.Supp. at 387 ("Since 29 U.S.C. § 1104(a)(1)(B) and (a)(1)(C) both require a prudent man standard to be employed by a fiduciary of an ERISA plan in carrying out his duties, the court will discuss the requirements of these sections together."); Confer-

---

**2.** In *Donovan v. The Guaranty National Bank of Huntington,* the district court for the southern district of West Virginia further elaborated on the idea behind diversification.

> Diversification of investments is the practice whereby funds are committed to different classes of investments which are characterized by different types of risks. The theory upon which this practice is based is that by allocating funds to different types of investments, the potential losses which might occur in one area due to a particular economic event will be offset by gains in another area. Even if such a

loss is not offset, its impact is at least limited to a relatively small portion of the fund.

> Conversely, by pursuing a strategy of non-diversification, an investor runs a risk of incurring substantial losses if the particular investment vehicle chosen performs badly or if one of few large investments chosen performs badly. Under such circumstances a particular negative economic event can devastate the entire plan or a great portion thereof.

4 E.B.C. 1686, "Findings of Fact" ¶ 15 (S.D.W.Va.1983).

ence Report at 5084 ("It is not intended that a more stringent standard of prudence be established with the use of the term "clearly prudent."). The distinction between the two subparagraphs lies in the acts under scrutiny. Subparagraph (B) requires that a fiduciary be prudent in each investment decision, while subparagraph (C) requires that a fiduciary be prudent in a deciding not to diversify a plan's investments.[3]

■ A fiduciary's subjective, good faith belief in his prudence will not insulate him from liability. *Lanka*, 810 F.Supp. at 387. "Rather, the prudent person standard has been determined by the courts to be an objective standard, requiring the fiduciary to (1) employ proper methods to investigate, evaluate and structure the investment; (2) act in a manner as would others who have a capacity and familiarity with such matters; and (3) exercise independent judgment when making investment decisions." *Lanka*, 810 F.Supp. at 387. Thus, the Kings' decision not to diversify must be measured by an objective standard—that of a prudent investor similarly situated.

■ Both parties have provided substantial expert testimony comparing the King Plan's investment portfolio to others in the industry. Richard Hinz, the Chief Economist and Director in the Office of Research and Economic Analysis for the Pension and Welfare Benefits Administration of the Department of Labor prepared an investigative report in which he enumerated five specific opinions regarding the Plan's investments. *See* Secretary's Motion for Partial Summary Judgment, Ex. 9. In summary, Hinz's opinions are: (1) that the Plan engaged in an investment strategy resulting in an imprudent level of diversification due to excessive investment in residential mortgage instruments with insufficient diversity in geographical distribution and which exposed the Plan to unreasonable and unnecessary risks of losses; (2) that the nature of the investments was such that it was unlikely that they could be liquidated without large losses; (3) that the lack of diversification is the result of "flawed investment strategy"; (4) that the lack of diversification is imprudent under a "similarly situated standard of behavior"; and (5) that the lack of diversification caused the Plan to experience an overall rate of return between the years 1985 and 1992 that was below the level of returns had the Plan diversified properly. The Secretary argues that as a result of the Plan's non-diversification, the Plan faces several risks, including default risk, interest rate risk, and inflation risk, which could result in large losses.[4]

Defendants submit the opinions of three experts who reviewed the Plan's portfolio in light of the Hinz Report: David E. Brock, president of the Bank of Brunswick, which does business in the area where the Company's investments are based; Alfred J. Morrison, a private investment management consultant; and William G. Psillas, an employee benefit consultant. Brock concluded that there is "little or no risk of loss associated with the portfolio." Brock Report at 2, The Secretary's Motion for Partial Summary Judgment, Ex. 8.[5] Morrison acknowledged

---

**3.** Defendants argue that Walter King carefully researched each mortgage and prudently assessed the risks of each investment. While that may be true, a fiduciary's prudence in each investment decision is only probative with respect to subparagraph (B). It has nothing to do with whether his decision not to diversify was "clearly prudent" under subparagraph (C). *See Brock v. Citizens Bank of Clovis*, No. 83–1054 BB, 1985 WL 71535 (D.N.M. Dec. 20, 1985) ("The evidence supports that each loan was prudent; however, that is not dispositive of the diversification inquiry."), *aff'd*, 841 F.2d 344 (10th Cir. 1988).

**4.** In *Citizens Bank of Clovis*, the court recognized that these three risks are associated with mortgages and explained each of them.

Default risk is the risk that payments will not be made timely or that it will be necessary to foreclose on the mortgaged property for repayment of the loan.... Spread or interest rate risk is the risk that the lender's cost of funds will approach or exceed the interest rate charged to the borrower.... Finally, inflation or purchasing power risk is that the expected real rate of return on a mortgage will not be realized because of unanticipated inflation." *Brock v. Citizens Bank of Clovis*, No. 83–1054 BB, 1985 WL 71535 (D.N.M. Dec. 20, 1985), *aff'd*, 841 F.2d 344 (10th Cir.1988).

**5.** Brock also concluded that the "low loan to value ratios, along with good payment histories, documentation and a good knowledge of the real estate market would indicate that the loans were

that "the King Plan did not incorporate sufficient diversification to comply with the literal intent of ERISA requirements." Morrison Report at 2, The Secretary's Motion for Partial Summary Judgment, Ex. 7. Morrison nevertheless concluded that as an asset class, the mortgages are low risk. With respect to Hinz's opinion that similarly situated plans would not have so invested, Morrison maintains that Hinz improperly compared the King Plan to Fortune 500 companies rather than a more similarly situated peer group. *Id.* at 3.

Such a comparison was made by Psillas. Psillas' data base contained 31 companies whose assets range from $250,000 to $10 million. Defendants argue that this data base should be used for comparison with the King Plan, whose total assets peaked in 1993 at just over $5 million. Psillas acknowledges that his comparison methods are "different than those typically used by the investment community." Psillas Report at 2, The Secretary's Motion for Partial Summary Judgment, Ex. 10. However, Psillas maintains that "the methodology utilized does provide an accurate, comparative measurement of the annualized investment returns of the plans indicated." *Id.* Psillas' comparisons show that the average annual return for the King Plan over the years 1984 to 1992 was higher than that of the 31 plans in his data base. *Id.*, Appendix I.

The differing opinions of Hinz, Brock, Morrison and Psillas demonstrate that there remains a genuine dispute of material fact—specifically, the prudence of the Plan's non-diversification. Accordingly, the Court determines that summary judgment is not appropriate.

■ The Secretary argues that Defendants' non-diversification is a per se violation of § 1104(a)(1)(C). Neither the case law nor the statutory language support this proposition. *See Brock v. Citizens Bank of Clovis*, No. 83–1054 BB, 1985 WL 71535 (D.N.M.

Dec. 20, 1985) ("The degree of concentration in any asset or in any particular type of asset which would violate ERISA is determined on an ad hoc basis."), *aff'd*, 841 F.2d 344 (10th Cir.1988). The language of subparagraph (C) in effect mandates a finding of fact that non-diversification was not clearly prudent before a finding of a fiduciary's liability. *Lanka*, 810 F.Supp. at 387. Without being able to assess the witnesses' credibility and on the record as it now stands, the Court cannot make such a finding.[6]

### IV. ADVISORY JURY

■ While Defendants acknowledge that there is no right to a jury in a case such as this where the Secretary seeks injunctive relief under ERISA, they request that the Court try the case with an advisory jury. *See* Fed.R.Civ.P. 39(c) ("In all actions not triable of right by jury, the court upon motion or of its own initiative may try any issue with an advisory jury."). The decision is purely discretionary. Neither party cites a case in which a court empaneled an advisory jury for a breach of fiduciary duty under ERISA. The Court determines that the circumstances in this case are not so unique or exceptional as to warrant the use of an advisory jury. Accordingly, the Court will deny the motion.

### V. CONCLUSION

For the reasons stated above, the Court determines that summary judgment is not appropriate in this case as there remains a genuine dispute of material fact. Accordingly, the Court will deny the cross-motions for summary judgment. A separate Order will issue.

---

made in a prudent manner." *Id.* As discussed above, this opinion is not relevant to the inquiry of whether non-diversification was prudent.

6. The Court notes that none of the cases cited by the parties were concluded on motions for summary judgment. More typical in these cases,

given the nature of the statute, is a bench trial. *See, e.g., Brock v. Citizens Bank of Clovis*, No. 83–1054 BB, 1985 WL 71535 (D.N.M. Dec. 20, 1985), *aff'd*, 841 F.2d 344 (10th Cir.1988); *Donovan v. Guaranty Nat'l Bank*, 4 Emp.Ben.Cas. 1686 (S.D.W.Va.1983).