K.K. HALL, Circuit Judge,
dissenting:
The district court abused its discretion in ruling that King was the prevailing party on the prohibited-transactions claims and that the Secretary’s position with regard to the diversification claims was not substantially justified. I would, therefore, reverse the district court’s order granting attorney’s fees to King.
I.
The district court ruled, and the majority agrees, that the dismissal with prejudice of the prohibited-transactions claims, in return for nothing more than King’s “promise to do what it was already legally required to do: adhere to ERISA,” is enough to confer prevailing party status on King because King “ ‘could [not] have fared any better.’ ” Ante at 151. This conclusion, however, is premised on an erroneous view of how the consent order affects the parties’ future legal relationship.[1]
A.
King, as the party moving for EAJA fees, had the burden of demonstrating that it had prevailed. In order to be seen as the prevailing party with regard to the prohibited-transactions claims, King had to show that the settlement “materially altered” the legal relationship of the parties and that the settlement, on balance, favored King. See Roanoke River Basin Ass’n v. Hudson, 991 F.2d 132, 139 (4th Cir.), cert. denied, 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993). Although we apply an abuse of discretion standard to the district court’s “prevailing party” determination, we review any predicate legal rulings de novo. See United States v. 2, 116 Boxes of Boned Beef, 726 F.2d 1481, 1486 (10th Cir.), cert. denied, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).
The analysis should begin with an examination of what result each party hoped to achieve. In his complaint, the Secretary claimed that the Kings, in their roles as fiduciaries of the pension plans, had violated 29 U.S.C. § 1106(a)(1)(D) & (b)(1) by making mortgage loans with plan assets to individuals who intended in turn to use the loans to finance the construction of homes by the construction company owned by the Kings. The relief requested was restoration to the plan of any losses resulting from such violations (although the complaint did not allege that losses had occurred). The Secretary also asked the court to enjoin King “from violating ERISA [and] from lending plan assets to customers of King Plumbing.” From King’s perspective as defendant, the best possible outcome would have been dismissal of the claims with prejudice, the quicker the better.
Had prohibited transactions been established, either through factfinding by the court or admission by King, 29 U.S.C.A. § 1109(a) (West 1985) would have provided the following options to the court: (1) make the responsible fiduciary personally liable for losses to the plan, and (2) “such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.” [2] Option # 1 was meaningless once the Secretary determined that there were no losses from any of the loans made with plan *154 assets.[3] Loss to the plan, however, is not an element of the prohibited-transactions claims.
Option #2, then, was the only source of relief. See Brock v. Robbins, 830 F.2d 640, 647 (7th Cir.1987) (injunctive relief appropriate despite lack of losses to plan). From the Secretary’s perspective, the settlement — an agreement by King to not violate the prohibited-transactions statutes in the future[4] — embodies the fullest measure of available relief. Most settlements involve some give and take, and the Secretary’s insistence on a concession of wrongdoing by King (if in fact there had been any wrongdoing) would have served no practical purpose. Under such circumstances, the Secretary would have been derelict to insist on a trial when he could get all he wanted in a settlement.
B.
Under the settlement, the district court retained jurisdiction “for the purpose of enforcing the terms of this Consent Order.” To say that King “could not have fared better” ignores the significant differences between seeking enforcement of an existing order and starting from scratch with a new complaint. Should he come to believe that King is engaged in violations of the terms of the settlement, the Secretary need only move to enforce the order. Whether any of the 47 violations alleged in the original complaint ever occurred would be immaterial; the only question for the court would be whether the new violations had been shown.
More significantly, the available relief would be expanded. Fines for civil and criminal contempt might be awarded against the contemnor. See United States v. United Mine Workers of America, 330 U.S. 258, 302-04, 67 S.Ct. 677, 700-01, 91 L.Ed. 884 (1947). An award of costs and attorney’s fees to the Secretary, not available under EAJA or ERISA in the context of an original enforcement action under 29 U.S.C. A § 1109(a), could be granted under the court’s inherent power to enforce its orders. See In Re General Motors Corp., 61 F.3d 256, 259 (4th Cir.1995). Moreover, an action to enforce an existing order would presumably proceed more expeditiously relative to an enforcement action initiated by complaint. A contempt action does not, as the majority asserts, “merely duplicate[ ]” an original enforcement action. Ante at 151.
We all have the duty to obey the law. When the Kings signed the agreement, however, violation of §§ 29 U.S.C. § 1106(a)(1)(D) & (b)(1) became virtually synonymous with contempt of the court, and the price of disobedience rose considerably. The district court erred in discounting the effect of the consent order. This error, which was the cornerstone of its decision, leads me to conclude that the court abused its discretion in according prevailing party status to King.
II.
Of course, King prevailed on the diversification claims, but that takes care of only the threshold requirement for EAJA fees. To recover fees, King had to also prove that the claims were not “substantially justified” and did not have “a reasonable basis both in law and in fact.” Pierce v. Underwood, 487 U.S. 552, 562, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988). The government’s action need only be “justified to a degree that could satisfy a reasonable person.” Id. at 565, 108 S.Ct. at 2550. Review of the relevant criteria — the stage of the proceedings at which the merits were decided, the views of other courts on the diversification issue, the merits of the case against King — leads me to eon- *155 elude that the district court abused its discretion in finding no substantial justification for the Secretary’s position.
The Secretary succeeded in making out a prima facie case of nondiversification and, in so doing, he forced King to shoulder the heavy burden of proving that it was “clearly prudent” not to diversify. 29 U.S.C.A. § 1104(1)(C) (West Supp.1996). When as much as 77% of a plan’s assets are in mortgages, and 72% of those in a single county, the statutory requirement of diversification is clearly not being fulfilled under any reasonable interpretation of the statute. Indeed, as the district court noted, even the Kings conceded that they had not met the diversification requirements of § 1104. Reich v. King, 861 F.Supp. 379, 383 (D.Md.1994) (Aug. 17, 1994, Memorandum denying cross-motions for summary judgment). In short, the case was a close one.
Although no two diversification cases are the same, the Secretary was able to cite numerous decisions in which courts had found violations flowing from concentrations of investments similar to those under the King plan. See, e.g., Donovan v. Guaranty National Bank, 4 Emp. Benefits Cas. (BNA) 1686 (S.D.W.Va.1983). King made no comparable showing.
Unrebutted evidence demonstrated that ultra-safe investments in government-insured mortgages would have brought comparable returns without the associated risk. Nevertheless, the majority approves of the district court’s ruling that the Secretary’s evidence was inadequate because the government expert failed to examine the particular mortgages in the plan’s portfolio and failed to “identify any specific reasons suggesting the likelihood” of any dangers that diversification is designed to avoid. Ante at 152. But sharp increases in inflation or interest rates and precipitous downturns in local economies cannot often be predicted with any degree of accuracy, and that very uncertainty is the reason ERISA requires that diversification be practiced so that the risk of large losses can be minimized. This remained a close case on the merits throughout.
I have no doubt that Mr. King is an intelligent and conscientious student of the local mortgage market; his success to date bears that out. However, the Secretary is statutorily authorized to bring enforcement actions to ensure the prudent operation of pension plans, and diversification is a specific requirement of plan-asset management. The majority opinion will no doubt dampen the Secretary’s willingness to pursue other plans where the assets are similarly concentrated. In the long run, the losers will be the beneficiaries of the plans. EAJA was intended to thwart government abuses, not to “chill the government’s right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.” Roanoke River Basin Ass’n, 991 F.2d at 139. The purposes of EAJA are disserved by this fee award.
I respectfully dissent.

. The majority asserts that the Secretary could not prove that King “actually engaged in prohibited transactions ... with respect to any of the forty-seven transactions identified in the complaint.” Ante at 151. The district court, however, never made such a finding.

. Under a general civil enforcement provision, 29 U.S.C.A. § 1132(a)(5) (West Supp.1996), the Secretary may seek "to enjoin any act or practice which violates any provision of [Subchapter I, which includes § 1106(a)] or [] to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [Sub-chapter I.]”

. It apparently came to light during the discovery phase of the litigation that the Kings were also engaging in or had engaged in another type of prohibited transaction by which the Kings would attempt to meet ERISA's minimum funding obligations with non-cash contributions to the plan. See Secretary of Labor's Opposition to Defendant King Plumbing’s Motion for Award of Attorneys’ Fees and other Expenses, (Exhibit D— Jan. 4, 1994, letter from Secretary's counsel discussing non-cash contributions). Such contributions are violative of 26 U.S.C. § 4975(c)(1)(A). See C.I.R. v. Keystone Consol. Industries, Inc., 508 U.S. 152, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993). Although the complaint was not amended to add such a claim, the consent order includes King's agreement not to make or receive such noncash contributions in the future.

. The requested removal of the fiduciary related only to the diversification claims.